This matter comes before the court on application for approval of the first report of the trustees of the Peoples Building and Loan Association of Newark, New Jersey, in voluntary dissolution, and for allowance of fees to the trustees and their counsel. The matter was first submitted to this court in October, 1939, and for a complete understanding of the present controversy, I incorporate herein a copy of my letter of November 25th, 1939, addressed to counsel. The letter is as follows:
"Final briefs in connection with the exceptions to the First Report and Account of the trustees in liquidation of Peoples Building and Loan Association of Newark were received on November 15th, and this is the first opportunity I have had to consider those exceptions.
"The first exception is to an item of $400 paid to Mr. Meehan for obtaining a certificate of authority issued by the Commissioner of Banking and Insurance to the trustees and is based upon the contention that the item represents a useless and unnecessary expense because the certificate had already been issued before Mr. Meehan was engaged to act for the trustees.
"The second exception relates to an item of $420 paid to one Burger (not the trustee) for an audit of the association's books. This exception is based upon the contention that the Department of Banking and Insurance had already audited the books and that, therefore, an additional audit was unnecessary.
"The third exception is to the payment of the sum of $2,228.68 as commissions on the sale of real estate, and this exception seems to be based upon the contention that commissions should be allowed only upon the sum of $6,500 representing the total cash consideration for the sales and not upon the full sales price. The balance of such price was made up by the surrender of stock of the Association. *Page 250 
"The fourth exception is to the payment of the sum of $550 in fees to Mr. Rizzo for legal services to the trustees since their election and this exception is based upon the contention that the trustees in their report represent that counsel has received no compensation for his services to the trustees and the fact that on this accounting he is seeking an additional allowance of $500 for legal services.
"The fifth exception is to the payment to Wirtz, one of the trustees, of the sum of $600 for his services as secretary. This exception is based upon the same grounds as the objection to the items paid to counsel, and to which exception has been taken, and on the additional ground that trustee Wirtz is acting in a dual capacity, whereas whatever services he has performed since his election as trustee must be considered as having been performed as such trustee and that he is not legally entitled to additional compensation as secretary.
"The sixth exception is to the payment of $100 to trustee Burger for salary as financial secretary to the trustees, and is based upon the same argument as that advanced in support of the fifth exception.
"As to the first exception, there is nothing before the court which would justify any finding for or against it, except the arguments of counsel, and such arguments are not proof.
"As to the second exception, I think there can be no doubt of the propriety of the trustees' payment of this item. The audit of the Department of Banking and Insurance made previous to the appointment of the trustees would not ordinarily furnish the trustees with sufficient information for the liquidation of the assets of the trust estate. A more complete and detailed audit for the information of the trustees was obviously necessary, and this exception will be overruled.
"As to the third exception, the contention that commissions should be allowed only upon the amount of cash consideration and not upon the amount of the consideration otherwise paid, is a novel proposition. It is not in accordance with custom, and, in my judgment, is unreasonable. I think the trustees were obliged to allow commissions on the full sales price except in the event of an agreement between the trustees and the agent affecting the sale to the contrary.
"As to the fourth exception, my perusal of the trustees' account disclosed the following payments to Mr. Rizzo:
 October, 1938 ....................... $23.00
 November ............................ 75.00
 December ............................ 45.50
 20.00
 120.00
 January, 1939 ....................... 122.50
 March ............................... 40.00
 April ............................... 41.00
 42.50
 40.00
 ________
 $569.50
 *Page 251 
"However, irrespective of the amount of previous payments to Mr. Rizzo, the exception would appear to be well-taken, unless it can be shown that the services of counsel are reasonably worth the amount of his sought-for allowance on the accounting in addition to the sums already paid. As to this, there are no proofs. The legal question as to the court's authority to make an allowance to counsel is reserved for further consideration in connection with the factual issue.
"As to the fifth exception, and as to the sixth exception, it would appear that there is no justification for the trustees acting in a dual capacity, and their payment to themselves of compensation for their services in one capacity and a request to the court for an allowance to compensate for their services in another capacity. The salaries of $600 and $100 respectively, paid to these two trustees, seem to have been a continuation of the salaries paid to them prior to dissolution. In my judgment, the trustees can not be permitted to pay themselves salaries and also ask for additional allowances. If the work of the several trustees is unequal, the work of one justifying larger compensation than that of others, the facts upon which a request for such larger compensation is based should be presented to the court and allowances made accordingly. There are no facts presented to the court on this application upon which the court could base any judgment on these exceptions. The fact that the account of the trustees showing the payment of these salaries has been approved by the Department of Banking and Insurance and that the Commissioner has approved of the allowances requested by the trustees and their counsel on this application is not binding upon the court. The issue respecting the amount of compensation to which the trustees are severally entitled will be decided when the complete facts are before the court, and not before.
"This whole proceeding seems to be more or less irregular, and in fact I consider the general practice in these accountings of liquidating trustees of building and loan associations as slipshod and far from uniform. It is seldom that two proceedings are entirely alike.
"The prayer of the petition attached to the trustees' account seeks an order to show cause addressed to the members of the association and to the Commissioner of Banking and Insurance and directing them to appear before the Court on a time and place to be therein named, to show cause why the account should not be allowed and allowances made to the trustees and their counsel for their respective services. No such order to show cause was advised in this matter, nor was any applied for. The petition, report and account seem to have been filed in the office of the Clerk in Chancery on September 29th, 1939, and an affidavit of one of the trustees filed on the same day indicates that on September 28th, the day before the report and account was filed, a notice was mailed to every member of the association that on the same day the trustee would file his report and account. I have been furnished with a copy of the printed notice so mailed. The statute (R.S. 17:12-81, c., as amended by Chapter 130, P.L. 1939) provides that the trustees mail such notice at least ten days prior to the filing of the account. There are numerous other requirements of *Page 252 
the statute which seem not to have been complied with; for instance, there is no report of the Commissioner of Banking and Insurance addressed to the Court in connection with this accounting. The only report which is presented to the Court is one by the examiner and the acting supervisor of the Voluntary Dissolution Section of the Department of Banking and Insurance. There is no report whatever to the court.
"When this matter first came before me, I believe on October 17th last, the only appearance by anyone representing any of the members of the association was that by Senator Pilgrim and he offered some oral argument objecting to the trustees' accounting. His objections should have taken the form of written exceptions duly filed and he was given an opportunity to file such exceptions, which he did on the following Tuesday, and these are the exceptions which are now before the Court. There have been no proofs presented to the court in support of the exceptions nor in support of the items in the account to which exceptions have been taken. The Court is asked to pass upon the matter without proof of any kind other than the account itself. Lengthy arguments are advanced by Senator Pilgrim in support of his exceptions and by Mr. Meehan in support of items to which exception has been taken, but these arguments are not proof. If the parties to this controversy desire to submit proofs they may do so before a master to whom the matter may be referred; if not, I will dispose of the exceptions without a reference and what I have said may be taken as an indication of what my decision will be."
Thereafter, on November 28th, 1939, an order of reference was made to the Hon. Charles F. Lynch, one of the special masters of this court, "to look into said trustees' report and accounting and the said exceptants' exceptions numbers First, Fourth, Fifth and Sixth, and to examine such witnesses as may be produced by the respective parties hereto and to report to this court with all convenient speed whether the above named exceptions be well taken or not."
Pursuant to that order testimony was taken before the master on January 25th and February 2d 1940, and the master filed his report on March 11th, 1940, in which he reported adversely to the first exception to the trustees' account. With respect to the fourth exception he reported that the counsel fees involved were reasonable, but suggested that the additional allowance of $500 requested by counsel for the trustees was not warranted and that such additional allowance, if any, should be limited to $200. As to the fifth and sixth exceptions, the master reported that the sums paid *Page 253 
to the two trustees by themselves were paid in good faith and that if additional allowances were made to them they should not exceed $192 each. Counsel for the trustees has now filed exceptions to the special master's report, claiming that the master exceeded his authority in reporting upon the amount of counsel fees to be allowed to counsel for the trustees and in suggesting the amount of allowances to the trustees themselves. There are three of such exceptions. Technically, the exceptions are well taken, because the master was restricted to reporting as to the merits of the first, fourth, fifth and sixth exceptions to the trustees' account, although he was directed "to look into the trustees' report and accounting," and under this provision he was justified in taking the proofs which are appended to his report. Perhaps the master should have confined his report, except as it refers to the named exceptions, to a reference to the proofs. However, no harm or prejudice has resulted to the trustees. The whole matter is still before the court.
Taking up first the exceptions to the trustees' account, the first exception is dismissed for the reasons stated by the master in his report. The second and third exceptions are dismissed for the reasons stated in my letter, which is quoted above. The fourth exception is dismissed for the reasons stated in the master's report. The fifth and sixth exceptions are sustained for the reasons stated in my letter and also upon authority of Vice-Chancellor Bigelow's decision in the matter of the voluntary dissolution of Locarno Building and Loan Association, reported in63 N.J.L.J. 257 (volume 63, No. 30, issue of Thursday, July 25th, 1940).
Taking up now the exceptions to the report of the special master, my conclusion is that they should all be sustained for the technical reasons already suggested, and the applications of the trustees and their counsel for allowances will be considered without reference to the master's report.
Each of the three trustees has applied for an allowance of $350 as compensation for his services, and Mr. Rizzo, as counsel for the trustees, has asked for an allowance of $500. R.S.17:12-88, touching dissolution and liquidation of building and loan associations, directs, the Court of Chancery to allow *Page 254 
reasonable compensation to the trustees for their services and costs and expenses of administration of the trust. It does not authorize the court to fix the compensation of counsel. Section 83, subdivision b, of that act, however, provides that the trustees may "pay such * * * counsel such reasonable compensation as they shall determine." It appears, therefore, that it would be inappropriate for the court at this time to make any allowance to counsel for his services other than those for which he has already been paid. The trustees are at liberty to pay him such reasonable compensation as they may determine and report the same in their next account, subject, however, to the court's approval of that account. Since the value of counsel's services to the trustee has been a subject of this controversy, on the exceptions to the trustees' account, it is suggested to the trustees that if more than $250 in addition to the payments already made is now paid to such counsel for his services it will not be approved by the court when the next account comes before it.
As to the allowances to the several trustees, I recognize the fact that in the Locarno Building and Loan Association Case
decided by Vice-Chancellor Bigelow he refused to make any allowances to the trustees because they had already paid themselves without authority. There is no doubt of the court's right to deny compensation to the trustees under the circumstances then present, or under the circumstances here disclosed; but it will be noted that in the instant case one of the trustees has received $600 as compensation for his services, another $100, and the third trustee has received nothing. Those who have received compensation will be directed to return it, and each trustee will be allowed a fee of $350, as requested, the master having reported that the trustees in this case had acted in good faith in making the challenged payments; and I think it would be inequitable to impose upon them the penalty of compelling them to act without compensation. Under the circumstances, a return of the moneys illegally paid is all that should be required, and that, I think, is in accord with the usual practice in matters of this kind. I will advise an order in accordance with these conclusions. *Page 255 
This controversy is a fair example of the results of the hybrid legislation by which the administration of trustees of building and loan associations in voluntary dissolution and liquidation is committed to the (dis)joint(ed) supervision of the Department of Banking and Insurance and the Court of Chancery. While it is not the province of the judicial branch of the government to advise the legislative branch, it may with propriety point out the result of the legislation here involved and to suggest that either the Banking Department or this court, acting alone, might function more efficiently in the matters thus committed to their supervision and control.
Since this controversy first came before this court the Vice-Chancellors sitting in the Newark vicinage have conferred with the Commissioner of Banking and Insurance and his counsel, Assistant Attorney-General Cohen, with reference to procedural matters, with the result that the practice in this court on accounting proceedings is now uniform; but the dual control and responsibility imposed by the statute continues.