IN RE: CONSTITUTIONALITY OF HOUSE BILL 88.

(64 A2d 169)

"February 8, 1949

The Honorable Sherman R. Moulton
Chief Justice of the Vermont Supreme Court
178 South Prospect Street
Burlington, Vermont

Dear Mr. Chief Justice:

The Legislature of the State of Vermont has passed, and I have signed, House Bill No. 88 entitled "AN ACT TO PROVIDE FOR OPINIONS BY THE SUPREME COURT ON THE CONSTITUTIONALITY OF PENDING OR PROPOSED BILLS OR RESOLUTIONS AND ON THE CONSTRUCTION OF CONSTITUTIONAL PROVISIONS." The following requests are made by virtue of this law.

I have grave doubts as to the constitutionality of House Bill No. 88, and I particularly refer to Section 5 of Chapter 2 of the Constitution of Vermont which reads "Section 5. The legislative.

executive and judicial departments, shall be separate and distinct, so that neither exercises the powers properly belonging to the others."

As Governor of the State of Vermont, I respectfully request your Court for an opinion as to the construction of this Section of our State Constitution and as to whether or not H. 88 is or is not constitutional.

If you find that H88 is, in the Court's opinion, constitutional, then I call the Court's attention to another Bill, House Bill No. 40, entitled "AN ACT TO ENABLE A TOWN TO AUTHORIZE ITS SCHOOL DIRECTORS TO CONTRACT WITH OTHER TOWNS TO PROVIDE MEANS AND FACILITIES FOR EDUCATION." H40 is pending legislation. It has been passed by both Houses of the Legislature and will be delivered to me within the next day or two.

The particular question in my mind arises in connection with Section 64 of the Vermont Constitution, which, among other things, provides . . . "A competent number of schools ought to be maintained in each town for the convenient instruction of youth . . ." It seems to me that a determination of the word "ought" is necessary so that the constitutionality of H40 may be determined. In this connection I respectfully propound the following questions:

1. Is House Bill No. 40 constitutional?

2. Is a town required to maintain a school within its town limits?

3. May two or more towns consolidate for the purpose of maintaining schools for the benefit of the youth in the respective towns?

Respectfully,

Ernest W. Gibson
Governor"

February 11, 1949

To His Excellency
The Honorable Ernest W. Gibson,
Governor of the State of Vermont:

In reply to your communication of February 8, 1949, addressed to the Chief Justice of the Supreme Court of this State, in which

you ask for an advisory opinion by the Supreme Court as to the constitutionality of House Bill No. 88, which has been signed by you, and if that Act be held to be constitutional, a further advisory opinion as to certain specified portions of House Bill No. 40, we have to say that, after consideration of the powers and function of the Vermont Supreme Court and its position with respect to the other coordinate departments of the government as prescribed by the Constitution of this State, we are obliged most respectfully to decline to comply with your request, for reasons which will be hereinafter stated.

House Bill 88 is as follows:

"AN ACT TO PROVIDE FOR OPINIONS BY THE SUPREME COURT ON THE CONSTITUTIONALITY OF PENDING OR PROPOSED BILLS OR RESOLUTIONS AND ON THE CONSTRUCTION OF CONSTITUTIONAL PROVISIONS.

*It is hereby enacted by the General Assembly of the State of Vermont:*

*Section* 1.  The governor, or the senate and house of representatives by joint resolution, may request of the Supreme Court, whether or not in session, an opinion as to the constitutionality of a pending or proposed bill or resolution, or an opinion as to the construction of a section, paragraph, clause or word of the Vermont constitution.

*Sec.* 2.  The request of the governor, or a copy of such resolution, when adopted by the senate and house of representatives and approved by the governor, certified by the secretary of state, shall be by the governor or said secretary, as the case may be, transmitted to the chief justice of such court.

*Sec.* 3.  Upon receipt of such request or copy said court, if in session shall forthwith proceed to the consideration of the subject matter thereof, and if not in session shall be forthwith called in session by the chief justice for such purpose.

*Sec.* 4.  When said court reaches a decision on the subject matter so submitted to it, it shall cause copies of its written opinion thereon to be forthwith transmitted by the clerk of said court to the governor, and, if the legislature is in session, to the president of the senate and the speaker of the house of representatives, respec-

tively; and such opinions shall be published in the same manner as other opinions of said court.

*Sec.* 5. This act shall take effect from its passage."

█ Advisory opinions, rendered by a court of last resort upon request of the executive or legislative departments, are sanctioned by the Constitutions of certain of the states of this country (Colorado, Florida, Maine, Massachusetts, New Hampshire, Rhode Island and South Dakota), although in such cases the justices act not as a court but as constitutional advisors of the other branches of government, (*In re Opinion of the Justices,* 126 Mass 557, 566) and opinions of this sort, while entitled to great consideration, do not have the force of judicial authority, since they are not given in the exercise of the judicial function, and are not regarded as binding upon the court, or upon the individual members thereof, even though the same question should be later presented in the regular course of judicial proceedings. Thayer "Advisory Opinions", Legal Essays, pp. 42-59; *Laughlin* v. *City of Portland,* 111 Me 486, 90 A 318, 323, 51 LRANS 1143. See also, Thayer "The Origin and Scope of the American Doctrine of Constitutional Law", 7 Harv. Law Rev. 129, 153.

But in the absence of a specific constitutional authorization and where the fundamental law distinguishes between the functions of the executive, legislative and judiciary departments, providing that neither shall exercise the powers and duties of the others, the courts of this country, whether Federal or State, have almost unanimously, when the question has been considered by them, declined to accede to an executive or legislative request for an opinion which cannot be considered otherwise than as extra-judicial.

An early application of this principle occurred in 1793 when President Washington addressed a letter to Chief Justice John Jay, asking whether he might receive the advice of the Supreme Court concerning certain questions involving the construction of the Treaty with France. After taking time carefully to consider the matter, an answer was returned, deferentially but firmly declining to give an opinion, and stating that the lines of separation drawn by the Constitution between the three departments of government, which were in certain respects checks upon each other, afforded "strong arguments against the propriety of our extra-judicially deciding the question alluded to . . ." Warren, "The Supreme Court in United States History" Vol. 1, pp. 108-111. And Mr. Warren adds this comment: "By the firm stand thus taken at so

early a stage in the career of the new government, and by declining to express an opinion except in a case duly litigated before it, the Court established itself as a purely judicial body; and its success in fulfilling its function has followed this exclusive method of deciding questions of law and of constitutionality of statutes." See also, Hudson: "Advisory Opinions of National and International Courts", 37 Harv. Law Rev. 970, 975-6; Thayer; "Advisory Opinions" Legal Essays, 53-54.

The foregoing doctrine has been consistently applied by the United States Supreme Court. In Keller v. Potomac Electric Power Co., 261 US 428, 444, 43 S Ct 445, 449, 67 L ed 731, it was held, upon authorities cited, that "the jurisdiction of this court and of the inferior courts of the United States ordained and established under and by virtue of the third article of the Constitution is limited to cases and controversies in such form that the judicial power is capable of acting in them and does not extend to an issue of constitutional law framed by Congress for the purpose of invoking the advice of this Court without real parties or a real case, or to administrative or legislative issues or controversies." See also, *Muskrat* v. *United States,* 219 US 346; 31 S Ct 250, 55 L ed 246, 252. The most recent pronouncement upon the subject appears in the recent (1948) decision in *Chicago and Southern Air Lines, Inc.* v. *Waterman S. S. Corporation,* 333 US 103, 113, 68 S Ct 431, 437, 92 L Ed 568, 577, wherein it is said: "This Court early and wisely determined that it would not give advisory opinions even when asked by the Chief Executive." See also, Story on the Constitution, 5th Ed. para. 1571.

▇ It has been held by the great weight of authority in the state courts, that where there is a constitutional separation of powers between the executive, legislative and judiciary departments of government an advisory opinion is not a judicial act, and may not be required of the court under purely statutory authority. *Re Constitutionality of House Bill No. 222,* 262 Kentucky 437, 90 SW 2d 692, 103 ALR 1085, 1086; *in re Senate,* 10 Minn 78, 80ff; *In re Workman's Compensation Fund,* 224 NY 13, 119 NE 1027, 1028; *State* v. *Baughman,* 38 Ohio St. 455, 459; *Shephard* v. *Wheeling,* 30 W Va 479, 481 ff, 4 SE 635; *Reply of the Judges of the Supreme Court,* 33 Conn 586 ff; *In re Opinion of the Justices,* 148 Miss 427, 114 So 887, 888; *White, Auditor* v. *Miller, State Tax Collector,* 159 Miss 29, 132 So 79, 80; *Morrow* v. *Corbin,* 122 Tex 553, 62 SW2d 641, 646; *Langer* v. *State,* 69 ND 129, 284 NW

238, 250. See also *Reilly* v. *Falcon Bldg. and Loan Assn.* (NJ) 17 A2d 71, 75. The only decision to the contrary that has come to our notice is *Re Opinion of Justices,* 209 Ala 593, 96 So 487, but we cannot agree with the reasoning therein employed.

■ The Constitution of Vermont provides (Chap. II, Sec. 5) that "The Legislative, Executive, and Judiciary departments, shall be separate and distinct, so that neither exercise the powers properly belonging to the others." While this section does not mean an absolute separation of functions, and one department may properly be authorized to exercise certain powers which may in some manner pertain to another, these powers must be such as are incidental to the discharge of the functions of the department exercising them, and beyond this the powers of one department may not constitutionally be conferred upon another. *Trybulski* v. *Bellows Falls Hydro-Electric Corporation,* 112 Vt 1, 6-7 and cases cited.

■ The judicial power, as conferred by the Constitution of this State upon this Court, is the same as that given to the Federal Supreme Court by the United States Constitution; that is, "the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction," *Muskrat* v. *United States,* 219 US 346, 31 S Ct 250, 55 L ed 246, 252. It is "the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision." Bouvier's Law Dict. (Rawle's Third Revision) tit. "Judicial Power" quoting from Miller, Constitution of United States, p. 314. By no possible construction of the Constitution of this State can this power be enlarged to include the giving of an opinion upon a question of law not involved in actual and bona fide litigation brought before the Court in the course of appropriate procedure. Organically, courts are not instituted to render advisory opinions. *Shoenbrun* v. *Nettrour,* (Pa.) 61 A2d 868, 869. A power to do so is in no wise incidental to the constitutional function of the judiciary of this State and no act of the Legislature can confer it. See *Trybulski* v. *Bellows Falls Hydro-Electric Corporation, supra.*

It is quite true that there have been occasions in which advisory opinions have been rendered by this Court to the Governor under statutes empowering the latter to require an opinion as to the constitutionality of a given act, or upon questions of law connected with the discharge of his duties. See *Opinion of the Judges,* 37 Vt 665 (Sec. 12, No. 5, Acts 1863); *In re Conditional Discharge*

*of Convicts,* 73 Vt 414 (V. S. 1006) ; *In re Municipal Charters,* 86 Vt 562, (P. S. 1341). But in no case was the question of the constitutional competency of the Court passed upon or even mentioned, and the mere fact that the Court complied with the request of the Governor neither precludes our consideration of the point, nor does it afford ·justification for our compliance in the present instance.

In giving our reasons for declining to comply with your Excellency's request, we have incidentally but necessarily indicated that your doubt as to the constitutionality of House Bill No. 88 is well founded. In view of what we have said, it is apparent that we cannot with propriety answer your further inquiry concerning House Bill No. 40.

<div align="center">

Sherman R. Moulton<br>
Chief Justice

John C. Sherburne<br>
Olin M. Jeffords<br>
Walter H. Cleary<br>
Charles B. Adams<br>
Associate Justices.