**Chittenden South Education Association, Hinesburg Unit v. Hinesburg School District; Hinesburg School Board, Rita Flynn Villa, Ruth Ayer, James Foster, Jean Kaidaisch and John O'Donnell**

[514 A.2d 1065]

No. 85-411

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed July 25, 1986

*James S. Suskin,* Montpelier, and *Robert H. Chanin* and *Bruce R. Lerner* of *Bredhoff & Kaiser,* Washington, D.C., for Plaintiff-Appellee.

*Dennis W. Wells* of *Downs Rachlin & Martin,* Burlington, and *Nicholas DiGiovanni, Jr.,* of *Morgan, Brown & Joy,* Boston, Massachusetts, for Defendants-Appellants.

**Gibson, J.** This is an appeal by the Hinesburg School District and the Hinesburg School Board (School Board) from a decision of the Vermont Labor Relations Board (VLRB) ordering the School Board to add certain provisions to their contract offer for the 1984-85 school year, and to reinstate striking teachers upon their unconditional application to return to work. The Chittenden South Education Association, Hinesburg Unit (Association) cross-appeals the VLRB determination that the declaration of finality under 16 V.S.A. § 2008 relieved the School Board of any further obligation to negotiate with the Association during the 1984-85 school year. We affirm.

This labor dispute arises out of contract negotiations between the Association, the exclusive bargaining agent for the Hinesburg elementary school teachers, and the School Board. In January 1984, the parties reached an agreement for the 1983-84 school year. In February, negotiations began for the following year. Both parties focused on economic issues, specifically on salary and health insurance. Unfortunately, they were unable to reconcile their differences on these issues, and they declared an impasse in May 1984. See 16 V.S.A. § 2006. Mediation efforts proved fruitless, and the parties proceeded to fact-finding. See 16 V.S.A. § 2007. The fact-finder's final report, issued on February 19, 1985, recommended a compromise solution. The Association accepted

the fact-finder's recommendations, but they were rejected by the School Board.

By letter dated March 12, 1985, the School Board officially modified its salary proposal, and communicated what it later referred to as its final position on all matters. At no point during the negotiations did the parties discuss deleting or modifying the binding arbitration provision contained in the employment contract covering the 1983-84 school year.

On March 19, 1985, the teachers voted to strike if settlement was not reached by April 3, 1985. The parties engaged in no further negotiations after March 19, and on April 3, 1985, the teachers walked out. That evening the School Board declared finality under 16 V.S.A. § 2008, and immediately implemented a Teacher Employment Policy. The new policy differed from the School Board's March 12 offer in several respects, the most important for purposes of this appeal being the deletion of binding grievance arbitration. The next day, the School Board sent each teacher a copy of the policy along with an individual contract and an explanatory letter. The letter stated that each teacher had fifteen days to sign and return the contract or else rejection would be presumed and he or she would be subject to replacement.

On April 18, 1985, the parties held a final mediation session. The School Board refused to negotiate further on the 1984-85 school year, contending that finality had been invoked, but it indicated a willingness to negotiate for the 1985-86 school year. The teachers discussed the possibility of ending the strike, but ultimately decided not to return to work.

On April 22, after thirteen school days had been lost to the strike, the School Board replaced the striking teachers with permanent replacements and reopened the Hinesburg School.

The Association filed unfair labor practices against the Board, alleging, inter alia, that the School Board committed unfair labor practices by (1) refusing to bargain in good faith prior to April 3, 1985; (2) unilaterally imposing a new policy that changed matters previously not in dispute; (3) refusing to bargain with the Association after declaring finality on April 3, 1985; and (4) improperly hiring permanent replacement teachers.

A hearing was held, and on August 30, 1985, the VLRB rendered its decision. It rejected most of the Association's claims but ruled that the School Board committed an unfair labor practice by refusing to bargain in good faith when it unilaterally changed

matters that were not in dispute during negotiations. See 21 V.S.A. § 1726(a)(5). The School Board attacks the VLRB ruling and order on four different grounds. We address these arguments in turn.

I.

First, the School Board contends that it had the right to unilaterally delete binding grievance arbitration from its Teacher Employment Policy under 16 V.S.A. § 2008.[1] In resolving this claim, we look first to the language of the statute.

16 V.S.A. § 2008 provides: "All decisions of the school board regarding matters in dispute in negotiations shall, after full compliance with this chapter, be final."[2] We focus here on the phrase "matters in dispute." According to the Association, binding grievance arbitration was never a matter in dispute. Therefore, it could not be made subject to a declaration of finality and unilaterally deleted by the School Board.

The School Board concedes that binding grievance arbitration was not a matter in dispute. Arbitration was an integral part of the 1983-84 contract, and its deletion had never been discussed in negotiations for the 1984-85 school year. In justifying its action, the School Board relies on the expiration of the 1983-84 contract, contending that it was under no further obligation to arbitrate

---

[1]  The School Board also claims the VLRB erred when it found that the School Board's failure to include a tentatively agreed-to Association Rights provision constituted an unfair labor practice. This claim implicates the same analysis as the omitted binding arbitration provision; however, we do not address it in the body of the opinion because we do not find it to be essential to the VLRB's ruling.

[2]  In urging us to reverse the VLRB's decision in this case, the School Board cites a multitude of federal court decisions construing provisions of the National Labor Relations Act (NLRA). The School Board concedes, however, that 16 V.S.A. § 2008 has no parallel provision under federal law. Consequently, decisions of the federal courts interpreting the NLRA are of limited assistance to us in determining how to interpret the language of the statute. See *Vermont State Colleges Faculty Federation, Local 3180* v. *Vermont State Colleges*, 138 Vt. 451, 454, 418 A.2d 34, 36 (1980) (resort to federal law unnecessary and inappropriate where relevant provisions of the State Employees Labor Relations Act and the NLRA are more different than they are alike); see also *Burlington Fire Fighters Association* v. *City of Burlington*, 142 Vt. 434, 435, 457 A.2d 642, 643 (1983) ("In prior labor decisions *involving parallel federal legislation*, this Court has looked to federal decisions interpreting the N.L.R.A. for guidance.") (emphasis added).

grievances when it unilaterally deleted binding arbitration from its Teacher Employment Policy.

    ■   The question the School Board implicitly seeks to have reviewed is a contractual question: When will a binding arbitration clause survive contract termination? See, e.g., *Nolde Brothers, Inc.* v. *Local 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 255 (1977) ("where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication"). Although a contractual analysis might be appropriate under another set of circumstances, the School Board's duty to negotiate before unilaterally deleting or changing matters not in dispute arises independently of the parties' contractual agreement. It is imposed on the School Board by an explicit and unambiguous statutory directive. See 16 V.S.A. § 2008. This statute allows a school board to make final decisions regarding matters in dispute after the parties have failed to reach agreement through the process of negotiation, mediation, and fact-finding. See 16 V.S.A. §§ 2001-2007. Matters that are not in dispute, such as the binding arbitration provision at issue in this case, have not been made part of the bargaining process, and thus cannot be unilaterally deleted or added pursuant to a declaration of finality under 16 V.S.A. § 2008.

The School Board contends that arbitration has traditionally been viewed as the *quid pro quo* for an agreement not to strike. See, e.g., *Boys Markets, Inc.* v. *Retail Clerks Union, Local 770*, 398 U.S. 235, 248 (1970). According to the School Board, the VLRB's ruling produces an anomalous and fundamentally unfair result because it forces the School Board to arbitrate grievances that arise months after a contract's expiration, while the teachers remain free to continue strike activity without limitation.

We disagree with the School Board's characterization of the VLRB's decision. The VLRB did not rule that deletion of binding grievance arbitration is per se an unfair labor practice or that the School Board must arbitrate grievances after the contract expires. It simply held that the School Board had to air its proposal to delete binding grievance arbitration and negotiate in good faith before it could take unilateral action on the issue. This interpretation of 16 V.S.A. § 2008 is in keeping with the plain language of the statute as well as prior cases in this area. See, e.g., *Burlington Fire Fighters Association* v. *City of Burlington, supra*, 142 Vt. at

435, 457 A.2d at 643 (construing 21 V.S.A. § 1726(a)(5) to prohibit employers from unilaterally changing conditions of employment "without first consulting a union with which it is carrying on bona fide contract negotiations . . . .").

"Where . . . a statute's meaning is plain and is directed toward a rational result, arguments that sound policy requires a contrary construction have no weight." *Vermont State Colleges Faculty Federation, Local 3180* v. *Vermont State Colleges, supra,* 138 Vt. at 456, 418 A.2d at 37; see also *In re VSEA, Inc.,* 143 Vt. 636, 640-41, 471 A.2d 230, 233 (1983) ("Where the meaning of a statute is plain and unambiguous, there is no need for construction and it must be enforced according to its terms."). 16 V.S.A. § 2008 is both plain on its face and directed toward a rational result. The statute serves to ensure that school boards provide teacher associations with advance notice of, and an opportunity to negotiate over, any proposed changes in the conditions of their employment before such changes are unilaterally imposed on them. This promotes the bargaining process contemplated by the Vermont statutes, and thereby increases the prospect for negotiation and agreement.

## II.

The School Board next contends the VLRB erred in ruling that the School Board's omission of binding arbitration converted what was initially an economic strike into an unfair labor practice strike.

The law on this subject is clear. "[A]n economic strike is converted into an unfair labor practice strike if it is 'prolonged or aggravated by the employer's unfair labor practice . . . .'" *NLRB* v. *Windham Community Memorial Hospital,* 577 F.2d 805, 814 (2d Cir. 1978) (quoting *NLRB* v. *Remington Rand, Inc.,* 130 F.2d 919, 928 n.8. (2d Cir. 1942)). In this case, the VLRB expressly found that the School Board's unfair labor practice, more specifically the deletion of binding grievance arbitration, "contributed to the continuation of the strike." Thus, as the Association correctly points out, the School Board's claim reduces to whether this finding is supported by evidence in the record.

Findings made by the administering body " 'must stand if there is any credible evidence which fairly and reasonably supports them.' " *In re Muzzy,* 141 Vt. 463, 470, 449 A.2d 970, 973 (1982)

(quoting *Seaway Shopping Center Corp.* v. *Grand Union Stores, Inc.*, 132 Vt. 111, 118, 315 A.2d 483, 488 (1974)). "[S]o long as the finding is supported by a quantity of evidence which is 'more than a mere scintilla,' " this Court will not reverse. *Id.* at 471, 449 A.2d at 973 (citations omitted).

Our review of the record here reveals more than a mere scintilla of evidence to support the VLRB's disputed finding. Two witnesses testified that the teachers considered returning to work after the School Board issued its Teacher Employment Policy, and that the deletion of the binding arbitration provision contributed to their decision to continue the strike. The Vermont Education Association staff member who worked with the Association during the negotiations unequivocally stated that the teachers did not feel they could go back under a policy that did not allow for binding arbitration and retroactive pay increases. The Hinesburg teachers' representative of the Association's negotiating team testified on cross-examination that if the policy had contained a provision for binding arbitration "[i]t certainly would have made a difference."

The School Board contends that this testimony does not reflect reality. The teachers struck, according to the School Board, because of economics. They rejected the School Board's offer of March 19 which contained a binding arbitration provision, and it "strains credulity," in the School Board's words, to believe that they would have returned to work had the School Board not deleted such provision from its Teacher Employment Policy.

This argument ignores the pressure the School Board brought to bear upon the teachers when it declared finality and threatened to hire replacements. In that atmosphere, the teachers may have been more willing to compromise on the economic issues if they had the assurance that their grievances would be resolved by arbitration. "The [VLRB], in the exercise of its special competence and expertise, considered the credibility of [the] witnesses and determined the weight to be given their testimony." *In re Young*, 134 Vt. 569, 571, 367 A.2d 665, 666 (1976). Where, as here, there is credible evidence to support the disputed finding, it must stand on appeal. Accordingly, we uphold the Board's determination that the deletion of binding arbitration contributed to the continuation of the strike.

## III.

The School Board's claim that the strike was converted back into an economic strike at the April 18 mediation session is without merit. Although the School Board agreed to reinstate grievance arbitration for 1985-86, it refused to engage in any further bargaining for the 1984-85 school year. Thus, although the School Board may have been able to cure its unfair labor practice, and thereby convert the strike back into an economic strike, see *Trident Seafoods Corp.*, 244 N.L.R.B. 566 (1979), it refused to modify its Teacher Employment Policy, relying on its right to declare finality under 16 V.S.A. § 2008.

## IV.

Finally, the School Board contends that the VLRB abused its discretion in ordering the School Board to reinstate striking teachers upon their unconditional offer to work. We disagree.

■ Under 21 V.S.A. § 1727(d), the VLRB is granted broad authority to remedy unfair labor practices. The statute directs the VLRB to issue cease and desist orders, and it allows the VLRB to order "affirmative action" in appropriate cases.

The reinstatement remedy is well recognized in labor disputes under federal law. See, e.g., *NLRB* v. *Heads & Threads Co.*, 724 F.2d 282, 288-89 (2d Cir. 1983). "If the work stoppage is an unfair labor practice strike, the employer must discharge any replacements in order to accommodate returning strikers." *Belknap, Inc.* v. *Hale*, 463 U.S. 491, 493 (1983). On the other hand, "[w]here employees have engaged in an economic strike, the employer may hire permanent replacements whom it need not discharge even if the strikers offer to return to work unconditionally." *Id.*

■ In this case, the VLRB concluded that the School Board converted the walkout into an unfair labor practice by unilaterally deleting binding grievance arbitration and the Association Rights provision from its 1984-85 Teacher Employment Policy. Consequently, it ordered the School Board to add those provisions to its contract offer for that year of bargaining, and to reinstate striking teachers who offered to return to work unconditionally under the amended contract. We find this order to be carefully drawn to remedy the harm caused by the School Board's unfair labor practice, and thus well within the VLRB's discretion.

## V.

The Association claims on cross-appeal that the VLRB erred as a matter of law when it ruled that "once [16 V.S.A.] § 2008 is legally invoked, a school board is no longer mandated to bargain for that year." Although we recognize the importance of the question posed, we decline to pass on the merits of this issue because it requires this Court to render an advisory opinion prohibited by this State's Constitution. See *In re Constitutionality of House Bill 88*, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949). Our determination would not entitle the Association to any further relief, nor would it change the relief afforded. In short, the case and controversy at bar has been resolved and this Court will go no further in its judgment.

*Affirmed.*

**Peck, J.**, concurring. I agree with the result reached by the majority and with the rationale employed in the well written opinion prepared by Justice Gibson. I write in concurrence only to emphasize that the conclusion of the Vermont Labor Relations Board (VLRB), which we have affirmed, that the appellants committed an unfair labor practice, was decided on very narrow grounds and should not be construed too broadly.

Neither the VLRB's conclusion, as I understand it, nor the opinion of this Court, should be interpreted as requiring school boards in all cases to agree to binding arbitration against their will. On the contrary, they stand only for the requirement that where there is an item in an existing labor contract, such as a provision for binding grievance arbitration, as there was here, it may not be deleted arbitrarily and unilaterally by one of the parties upon termination of the prior contract, during, or subsequent to, negotiations for a new contract or a declaration of finality, without appropriate notice and collective bargaining on the proposed deletion(s). To do so constitutes an unfair labor practice. *Burlington Fire Fighters Association* v. *City of Burlington*, 142 Vt. 434, 457 A.2d 642 (1983).

Given the power of school boards under the statute to declare finality, their leverage in contract negotiations with their teachers is obviously considerable. Accordingly, boards have a legal, if not a moral obligation, to act in the utmost good faith both before and after resorting to such an extreme and terminal action. How-

ever, had it not been for this one unilateral-action error in this matter, which probably resulted from a misunderstanding of the law rather than being an act of bad faith, it appears to me that defendants might well have prevailed in this proceeding. It is for this reason that I urge against too broad a reading of the Court's opinion. Strike action is a right of teachers under Vermont law, and may often be effective; nevertheless, it is a calculated risk fraught with the possibility of job losses if the school board's course of conduct is without legal fault.

I am inclined to agree with appellants that the relief fashioned by the VLRB was hard. If the defendants had a legitimate economic basis for their position, ab initio, it may be that the impact of the remedy will increase that difficulty for the school and the taxpayers of this small community. Nevertheless, as the opinion holds, the order of the VLRB was within its broad discretionary powers to fashion a remedy in cases under its jurisdiction. Nor can it be said fairly, as a matter of law, that there has been any abuse of those powers.