### J. Lee and Susan Baker and Welland and Esther Horn v. Town of Goshen

[730 A.2d 592]

No. 97-038

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed March 19, 1999

*John R. Barrera*, Middlebury, for Plaintiffs-Appellants.

*F. Rendol Barlow* of *Langrock Sperry & Wool*, Middlebury, for Defendant-Appellee.

**Dooley, J.** This appeal is from a decision of the Vermont Environmental Court granting a permit to relocate and modify a noncomplying structure, but also ruling that two parcels of land had merged for purposes of zoning regulation. Appellants Welland and Esther Horn are the former owners of all of the land in issue. Also appealing the decision are J. Lee and Susan Baker, the current owners of the smaller, one-acre parcel. The larger, fourteen-acre parcel is now owned only by J. Lee Baker, although both he and his wife Susan reside on that parcel. Appellants appeal only from the merger decision. We dismiss the appeal because it seeks an advisory opinion.

In 1969, the Horns divided the land in question into a one-acre parcel and a fourteen-acre parcel, selling the one-acre parcel, with a cabin, to a third party. The one-acre parcel is bordered on the east (rear) and south by the fourteen-acre parcel. The one-acre parcel was conveyed back to the Horns in 1971. In 1993, the Horns conveyed the fourteen-acre parcel to J. Lee Baker, who built a house on it. In 1996, the Horns conveyed the one-acre parcel to the Bakers, as tenants by the entireties, retaining a life estate for Welland Horn.

In 1971, the Town of Goshen adopted a zoning ordinance which requires that residential lots be a minimum of ten acres in area in the district where the land lies.

In 1996, the Bakers applied for a permit to build a new foundation on the one-acre lot and to relocate the preexisting cabin on this new

foundation. The Town zoning ordinance requires a front yard setback of 85 feet and side-yard and rear-yard setbacks of 200 feet. At its original location, and considering only the one-acre parcel, the cabin complies with only the front-yard setback requirement. The relocation would move the cabin back and turn it approximately 45 degrees, leaving it less conforming with respect to the rear-yard setback requirement, but slightly more conforming with respect to the side-yard setback requirements. The new location, like the original location, fully complies with only the front-yard setback requirement. If the two parcels were considered as one, the cabin would meet setback requirements except with respect to the north side of the property. Such consideration, however, creates a new nonconformity because the zoning ordinance prohibits "more than one residential building on a lot."

The Town apparently treated the permit application as a request for a variance. On May 21, 1996, the Town granted the variance, with conditions. Although appellants received the requested permit, they appealed to the environmental court in order to challenge two conditions: (1) that the two parcels must be conveyed as a single fifteen-acre parcel "if and when a sale occurs in the future"; and (2) the cabin can be used on a seasonal basis or as a guest house, but not as a year-round residence.

The environmental court agreed that appellants should receive a permit to move the cabin, but the court struck the two conditions. It did so, however, on the basis that appellants did not need a variance because the lots had merged and that the only remaining nonconformity was the inadequate setback with respect to the north side line. Because the relocation of the cabin reduced that nonconformity, the court issued the permit without granting a variance.

Appellants now appeal to this Court. Although the environmental court decision gives them the permit they requested, without the conditions to which they object, they ask us to reverse the rationale of the environmental court decision and rule that there has been no merger of the lots for purpose of the Town zoning ordinance. The Town has not appealed from the decision to strike the permit conditions and, in its brief, asks us to affirm the rationale of the environmental court decision.

We begin with a preliminary issue. The Town contends that we cannot consider the appeal because it was filed too late.[1] On December 13, 1996, the environmental court issued oral findings and conclusions granting the application as proposed without the conditions to which appellants had originally objected. On that date, the clerk of the environmental court made the following docket entry: "permit granted; ruling on the record. CASE CLOSED." On January 13, 1997, a Monday, appellants filed a notice of appeal in the environmental court by facsimile transmission. On January 14th, they filed with the court the original of the notice together with the filing fee. On the next day, they moved the environmental court for a written decision. The court granted the motion and issued the written decision on April 17, 1997.

The Town argues that entry of judgment occurred when the clerk made the docket entry memorializing the oral decision. Because the notice of appeal was due to be filed within thirty days of the date of entry of judgment, see V.R.A.P. 4, the Town argues that the notice was due on January 12, 1997, extended to January 13th because no filing could be made on Sunday. See V.R.C.P. 6(a) (excluding last day of filing period if occurring on Saturday, Sunday or holiday). The Town then argues that appellants failed to file the requisite notice by that date because the facsimile transmission does not qualify as a notice of appeal under the rule.

Although the parties have briefed whether a notice of appeal can be filed through a facsimile copy, we conclude that we can resolve the timeliness issue without determining the effectiveness of the facsimile. The appeal period runs from the date of "entry of judgment." See *id.* The process of creation and entry of judgment is governed by V.R.C.P. 58:

> [U]pon a decision by the court granting or denying relief, the clerk, unless the Presiding Judge otherwise orders, shall forthwith prepare the judgment without awaiting any direction by the court. The Presiding Judge shall promptly approve and sign the judgment, and the clerk shall thereupon enter it. A judgment is effective only when entered as provided in Rule 79(a).

---

[1] This issue was originally raised in a motion to dismiss. Justice Morse denied the motion, directing that the issue of the timeliness of the notice of appeal be briefed with the merits.

V.R.C.P. 58. Civil Rule 79(a) requires the clerk to keep a civil docket and to enter in it judgments, showing the date of entry and its "nature and subject matter." V.R.C.P. 79(a). The clerk is also required to record final judgments, and certain other orders, in a book for that purpose as soon as possible after the rendition of the judgment or order. See *id.* at (b).

The federal rule is "substantially similar" to Vermont Civil Rule 58, although the federal rule explicitly requires a separate judgment document. See Reporter's Notes, V.R.C.P. 58. Federal Rule 58 is interpreted to require two steps: the preparation and approval of the separate judgment, and entry of the judgment on the docket. See 11 C. Wright, A. Miller & D. Kane, Federal Practice and Procedure § 2785, at 23 (2d ed. 1995). Both steps are mandatory. See *id.* § 2785, at 25.

We conclude that Vermont Civil Rule 58 also requires a two-step process. The presiding judge must "approve and sign the judgment," although the judgment need not be one wholly separate document, see *Morissette v. Morissette*, 143 Vt. 52, 58, 463 A.2d 1384, 1388 (1983), and the clerk must enter it. In this case, the first step was omitted. Although the clerk made a docket entry of the court's decision, the judge neither approved nor signed a judgment.

The Town argues that we already decided in *Alma Realty Co. v. Sugarbush Valley Corp.*, 136 Vt. 406, 392 A.2d 379 (1978), that judgment is entered for purposes of appeal even in the face of technical noncompliance with Rule 58. We held in *Alma Realty* that a stipulation of discontinuance, filed by the parties and entered by the clerk, serves as a final judgment without any action from the judge. *Id.* at 408-09, 392 A.2d at 380. *Alma Realty* is based on the specific wording of V.R.C.P. 41(a)(1)(ii) (providing for voluntary dismissal without order of court upon "filing of a stipulation of dismissal signed by all parties who have appeared in the action") and never mentions the requirements of Rule 58. We do not believe the rule in *Alma Realty* governs this circumstance, where there is no specific rule providing for something other than the acts described in Rule 58 to be deemed the final judgment of the court.

The Town also notes that Rule 58 specifically contemplates situations in which the trial judge will direct the clerk not to prepare a judgment. See V.R.C.P. 58 (requiring clerk to prepare judgment unless trial court "otherwise orders"). According to the Town, the environmental judge necessarily invoked this authority when she made her final ruling from the bench. This argument confuses the

decision with the judgment. The rule specifically requires action after the court renders a decision in order to reduce that decision to a judgment. The fact that a decision is oral in no way implies that the court has somehow decided that there should not be a signed judgment. Indeed, the purpose of the "otherwise orders" language in Rule 58 is not to eliminate the requirement of a signed judgment in some cases but to relieve the clerk of the responsibility for preparing it in appropriate circumstances. See Reporter's Notes, V.R.C.P. 58, 1972 amendment ("The clerk ordinarily will prepare the form of judgment, but the Presiding Judge may order otherwise at the time of verdict or decision if the judgment is one appropriate for judicial participation or submission of a form by the attorneys.").

Although not determinative, we note that a requirement of a written judgment to commence the period of appeal from the environmental court is consistent with a similar requirement with respect to decisions of zoning boards that are appealed to the environmental court. Thus, we held in *In re White*, 155 Vt. 612, 615, 587 A.2d 928, 930 (1990), that a decision of a zoning board does not become final, so as to begin the appeal period, until it is written. Cf. *Leo's Motors, Inc. v. Town of Manchester*, 158 Vt. 561, 563-64, 613 A.2d 196, 198-99 (1992) (deemed approval mechanism not triggered by inadvertent failure to mail party written decision). The instant proceeding is an example of why we should insist on a written judgment in a permit case. The only issues involved in the appeal to the environmental court involved permit conditions. Such conditions are fully enforceable. See *In re Robinson*, 156 Vt. 199, 202, 591 A.2d 61, 62 (1991). It is important that they be explicit and ascertainable so that subsequent purchasers and others can determine the applicable restrictions on the use of the land in question. See *In re Kostenblatt*, 161 Vt. 292, 298, 640 A.2d 39, 43 (1994). Yet, the environmental court's docket entry is so summary that it fails to address the permit conditions that were the subject of the appeal. Thus, persons interested in the use of this property can determine the applicable usage restrictions only by ordering a transcript of the oral decision, a costly and unreasonable step to require for gaining access to a publicly rendered decision.

We hold that absent a specific contrary court order, V.R.C.P. 58 requires that the court approve and sign a written judgment order. Without such an order, the docket entry of the court's decision does not constitute entry of judgment and does not commence the running of the appeal period. If anything, the notice of appeal in this case was

premature and is deemed to have been filed on the date of entry of judgment. See V.R.A.P. 4. This appeal was brought within the applicable time limit.

Because of the alignment of the parties, however, the merits of this controversy raise a different jurisdictional question. We now turn to that question.

Appellants' position is that, for zoning purposes, the one-acre parcel in question must be considered in isolation from the surrounding land, even though the adjoining parcel is owned by J. Lee Baker and contains the primary residence he shares with Susan Baker. They rely on our recent decision of *In re Weeks*, 167 Vt. 551, 712 A.2d 907 (1998), in which we held that a zoning merger does not occur when separate parcels come into common ownership *after* the effective date of the zoning ordinance, unless the zoning ordinance provides to the contrary. See *id.* at 557, 712 A.2d at 910-11. The Town agrees that the governing law is contained in *Weeks*, but disagrees with the appellants on the application of that law to this proceeding.[2]

We stress, however, that the purpose of this proceeding is to determine whether appellants are entitled to a permit to relocate their cabin, and whether conditions should be attached to any permit. Appellants are satisfied with the permit they received from the environmental court and no longer contest any of its conditions. Moreover, the legal ruling they seek from us would undercut, not support, their permit because it would mean that they need a variance that the environmental court did not grant them. Although the zoning board may have granted a limited variance, it did not approve the more substantial variance needed if the one-acre parcel is considered in isolation from the fourteen-acre parcel.

In *In re Constitutionality of House Bill 88*, 115 Vt. 524, 64 A.2d 169 (1949), this Court advised the Governor that a legislative enactment requiring the Court to render advisory opinions on the constitutionality or construction of proposed legislation was itself unconstitutional. In doing so, we explained the general principle that "courts are not instituted to render advisory opinions." *Id.* at 529, 64 A.2d at 172. We have consistently followed the content of that decision since that time. Applying the principles of *House Bill 88* to cases coming before us, we summarized in *Wood v. Wood*, 135 Vt. 119, 121, 370 A.2d 191,

---

[2]The Legislature amended 24 V.S.A. § 4406, effective April 27, 1998, to deal with the merger of preexisting small lots for zoning purposes. Neither party has addressed the relevance of this statute.

192 (1977), that an appellate question "must not be premature, in that it must be a necessary part of the final disposition of the case to which it pertains" and explained that "establishment of legal doctrine derives from the decision of actual disputes, not from the giving of solicited legal advice in anticipation of issues." See also *Kingsbury v. Kingsbury*, 137 Vt. 448, 454, 407 A.2d 512, 516 (1979).

We faced the situation before us in *Chittenden South Education Association v. Hinesburg School District*, 147 Vt. 286, 514 A.2d 1065 (1986), in which a teachers' union, as cross-appellant, argued that the Vermont Labor Relations Board had erred in the rationale it used to reach a decision that the union supported. We declined to reach the issue, stating:

> Although we recognize the importance of the question posed, we decline to pass on the merits of this issue because it requires this Court to render an advisory opinion prohibited by the State's Constitution. Our determination would not entitle the Association to any further relief, nor would it change the relief afforded. In short, the case and controversy at bar has been resolved and this Court will go no further in its judgment.

*Id.* at 294, 514 A.2d at 1071 (citations omitted).

The rationale used by the environmental court to give appellants the relief they have requested may have future consequences, but it is premature to define those consequences. As in *Chittenden South Education Association*, our decision would not entitle appellants to any further relief or change the relief afforded. Accordingly, we are without power to reach the issues raised on appeal.

*Appeal dismissed.*