NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 52

No. 2017-165

| | |
|---|---|
| In re Investigation into Programmatic Adjustments to the Standard-Offer Program (Renewable Energy Vermont, Appellant) | Supreme Court |
| | On Appeal from Public Utility Commission |
| | October Term, 2017 |

James Volz, Chair

Kimberly K. Hayden of Paul Frank + Collins P.C., Burlington, for Appellant.

Jeanne Elias, Special Counsel, Montpelier, for Appellee Department of Public Service.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1.    **REIBER, C.J.**   Appellant Renewable Energy Vermont (REV) asks this Court to reverse and remand an order of the Vermont Public Utility Commission[1] that altered technology allocations in the standard-offer program for renewable energy projects. We conclude that REV seeks an advisory opinion and therefore dismiss the appeal for lack of jurisdiction.

¶ 2.    The standard-offer program was established by the Legislature in 2005 as part of an effort to promote development of renewable energy in Vermont. See 30 V.S.A. §§ 8001, 8005, 8005a. The standard-offer statute directs the Commission to authorize "long-term power-purchase

_____

[1] Prior to July 1, 2017, the Public Utility Commission was known as the Public Service Board. See 2017, No. 53, § 9. For clarity, we will refer to it as the Commission throughout this opinion.

contracts with electrical providers in Vermont for renewable energy projects that have a nameplate capacity of 2.2 megawatts (MW) or less and meet certain other criteria." In re Programmatic Changes to the Standard-Offer Program, 2014 VT 29, ¶ 2, 196 Vt. 175, 95 A.3d 999 (citing 30 V.S.A. § 8005a(b)). "Once a plant owner executes a standard-offer contract, the [Commission] guarantees a set price for that plant's energy for the duration of the contract regardless of whether the market price changes." Id. (citing 30 V.S.A. § 8005a(f)(4)). Vermont electric utilities are then required to purchase the electricity generated by these projects at that price. 30 V.S.A. § 8005a(k)(2).

¶ 3.    The standard-offer program has a cumulative plant capacity of 127.5 MW, a portion of which is made available to new projects each year. Id. § 8005a(c). For 2017, the available new capacity was 7.5 MW. Id. § 8005a(c)(1)(A). This was increased to 8.625 MW due to unsubscribed capacity from 2016. A portion of each year's capacity, known as the "provider block," is reserved for new plants proposed by Vermont retail electricity providers. Id. § 8005a(c)(1)(B). The remaining capacity—the "developer block"—is reserved for independent developers. Id. The Commission is required to allocate the cumulative 127.5 MW capacity among the following designated categories of renewable energy technologies: solar power; wind power with a plant capacity of 100 kW or less (referred to by the Commission as "small wind"); wind power with a plant capacity greater than 100 kW (referred to as "large wind"); landfill methane; hydroelectric power; and biomass power. Id. § 8005a(c)(2). This requirement furthers the stated legislative goal of "[p]romoting the inclusion, in Vermont's electric supply portfolio, of renewable energy plants that are diverse in plant capacity and type of renewable energy technology." Id. § 8001(a)(8).

¶ 4.    The Commission solicits bids for qualifying projects through an annual request-for-proposal (RFP) process. Prior to issuing the annual RFP, the Commission determines the maximum price that utilities will be required to pay for electricity generated by new projects in

2

each category of renewable technology, "with a goal of ensuring timely development at the lowest feasible cost." Id. § 8005a(f). These price caps operate as a ceiling for bids. Id.

¶ 5.     In 2016, the Department of Public Service observed that solar projects were on track to fill three-quarters or more of the cumulative capacity if the RFP process was not modified. To address this disparity, the Commission issued an order in February 2016 that set aside a "technology diversity developer block" that would be allocated on an equal basis to each of the non-solar technology categories. Only projects using the designated technology would be permitted to bid for the set-aside capacity for that technology. The remaining capacity in the developer block would be available to projects in any technology category and would be awarded based solely on bid price. This was called the "price-competitive developer block." The Commission ordered that the new allocation arrangement was to remain in effect for the remainder of the standard-offer program, unless changed by a subsequent order.

¶ 6.     After the Commission issued its 2016 order, the Legislature passed Act 174, which created a temporary pilot program for standard-offer projects located at "preferred locations."[2] 2015, No. 174 (Adj. Sess.), § 12a (effective July 1, 2016) (codified at 30 V.S.A. § 8005a(c)(1)(D)). Act 174 required that for one year beginning on January 1, 2017, the Commission was to allocate one-third of the annual capacity increase to these projects. Id. In September 2016, the Commission announced that due to Act 174, it planned to revisit the allocations set forth in its February 2016 order as part of its annual price review.

¶ 7.     The Commission convened a workshop in October 2016 to discuss the preferred location pilot program, price caps, and technology allocations. Following the workshop, comments were filed by various utilities, developers, and other stakeholders, including REV.

_____

[2] "Preferred locations" include existing buildings, parking lot canopies, landfills, and brownfield sites. 30 V.S.A. § 8005a(c)(1)(D)(iv).

3

REV, which is a trade organization made up of businesses, nonprofits, and utilities committed to promoting renewable energy and energy efficiency in Vermont, recommended that the Commission maintain the technology diversity developer block established in the February 2016 order.

¶ 8. In an order entered on March 2, 2017, the Board set technology allocations and price caps for the 2017 RFP. The Board ordered that one-third of the 8.625 MW capacity for 2017 be allocated to projects located at preferred locations under the pilot program, as required by Act 174. Fifteen percent of the annual capacity was allocated to the provider block pursuant to 30 V.S.A. § 8005a(c)(1)(B)(i). The Commission ordered that 2.2 MW be made available to the price-competitive developer block for projects of any technology category. The remaining 2.69 MW in developer block capacity was allocated equally to "each non-solar technology category with an avoided-cost price cap greater than the solar price cap." For 2017, this meant the capacity was allocated to small wind and food waste anaerobic digestion projects. The order stated that this arrangement would continue in 2018 and succeeding years.[3] In effect, the order eliminated the capacity set-asides for large wind, landfill gas, biomass, and hydroelectric power for 2017, and instead required projects using those technologies to bid in the price-competitive developer block along with solar projects in the 2017 RFP process.

¶ 9. On March 16, 2017, REV moved to alter or amend the order. REV argued that the elimination of capacity set-asides for all technology categories other than small wind and food waste anaerobic digestion violated the Commission's prior orders and 30 V.S.A. § 8005a. It asserted that the order would exacerbate the existing lack of technology diversity in the standard-

---

[3] The order also set the price caps for each category of technology for the 2017 RFP and determined the avoided costs that serve as prices caps for farm methane projects. These determinations are not at issue in this appeal.

4

offer program. REV asked the Commission to revert to the technology allocations set forth in the February 2016 order.

¶ 10. In an order entered on March 29, 2017, the Commission denied REV's motion to retain the 2016 technology allocations, stating:

> We are persuaded that technologies with a price cap lower than or equal to the solar price cap can compete with other technologies such as solar. In particular, biomass and large wind price caps are significantly lower than the solar price cap, enabling these technologies to compete in the Price-Competitive Developer Block. We conclude that the allocation methodology represents a reasonable approach that will promote technology diversity while at the same time ensuring the timely development of projects at the lowest feasible cost. We will continue to review the allocation methodology annually to ensure that reasonable diversity is achieved under the standard-offer program.

¶ 11. REV filed a second motion to alter or amend the order on April 7, 2017, arguing that the March 29 order was the first time the Commission explained its rationale for eliminating large wind from the technology diversity developer block and therefore its first opportunity to respond. REV argued that the Commission failed to give notice to the parties that it was going to exclude large wind from the block or to make findings to support its order. It further argued that the order was clearly erroneous because the evidence showed that large wind and other technologies were not able to compete on price with solar technology projects. The Commission denied REV's motion as untimely because it was filed more than ten days after the March 2, 2017 order. It also rejected REV's argument that the Commission had provided insufficient notice of the proposed changes.[4]

¶ 12. On appeal, REV argues that the Commission's decision arbitrarily abandons the technology allocations adopted in 2016, conflicts with the intent of the standard-offer statute, and is clearly erroneous because it will discourage technology diversity. REV further argues that the

---

[4] REV does not renew this argument on appeal.

Commission's order is unsupported by findings and fails to take into account relevant information from the Department's 2017 Standard-Offer Report. REV asks this Court to remand the matter to the Commission for it to set aside capacity for large wind, hydroelectric power, and biomass, starting with the 2018 RFP. We conclude that because REV seeks an advisory opinion, we lack jurisdiction to consider the merits of REV's arguments.

¶ 13. This Court only has subject matter jurisdiction over "actual controversies arising between adverse litigants." In re Constitutionality of House Bill 88, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949) (quotation omitted); see also Brod v. Agency of Nat. Res., 2007 VT 87, ¶ 8, 182 Vt. 234, 936 A.2d 1286. "The existence of an actual controversy turns on whether the plaintiff is suffering the threat of actual injury to a protected legal interest, or is merely speculating about the impact of some generalized grievance." In re Bennington Sch., Inc., 2004 VT 6, ¶ 19, 176 Vt. 584, 845 A.2d 332 (mem.) (quotation omitted). "[T]he consequences of the dispute must be so set forth that the court can see that they are not based upon fear or anticipation but are reasonably to be expected." Anderson v. State, 168 Vt. 641, 644, 723 A.2d 1147, 1149 (1998) (mem.) (quotation omitted). In assessing whether an actual controversy sufficient to confer jurisdiction exists, we must "distinguish the 'probable' from that which is merely 'possible.' " Id. (quoting Vill. of Bennington v. Hawks, 100 Vt. 37, 40, 134 A. 638, 639 (1926)).

¶ 14. Here, REV argues that the Commission erred by eliminating the technology set-asides for large wind, hydroelectric power, and biomass power in the March 2017 standard-offer program RFP order. REV seeks no relief from that order, however. It does not challenge the contracts issued under the 2017 RFP or argue that it or its constituent members were harmed by the 2017 order. Cf. In re Programmatic Changes, 2014 VT 29, ¶¶ 1, 16 (reversing order that erroneously determined developer's proposed project did not qualify for standard-offer contract).

6

Instead, it asks the Court to remand the matter to the Commission with a direction to set aside capacity for large wind, biomass, and hydroelectric projects for 2018 and future years.

¶ 15. REV's argument is based on the assumption that the price caps for large wind, hydroelectric power, and biomass will continue to be lower than the price cap for solar, such that there will be no capacity set aside for these technologies in 2018 and future years under the March 2017 order. The outcome feared by REV is speculative. At the time this case was briefed, the 2018 RFP docket had not even been opened. The Commission is required by statute to annually review and set the price caps for each technology category. 30 V.S.A. § 8005a(f)(3). The price caps are based on numerous factors, including land costs, tax incentives, financing costs, and other market forces, and therefore they can and do change from year to year.

¶ 16. Furthermore, the history of this case demonstrates that the technology allocation arrangement itself may be altered by the Legislature or the Commission from year to year. The Commission stated in its March 29 order that it "will continue to review the allocation methodology annually to ensure that reasonable diversity is achieved under the standard-offer program." Although it is possible that the 2017 arrangement will be continued in 2018 and beyond, thereby adversely affecting REV or its members, we cannot say under these circumstances that it is probable.

¶ 17. REV does not seek relief from the Commission's technology allocation for 2017, but only challenges the allocations anticipated in 2018 and beyond. In essence, REV asks us to direct the outcome of proceedings that have not yet occurred. "It is the tradition of constitutional common law that the establishment of legal doctrine derives from the decision of actual disputes, not from the giving of solicited legal advice in anticipation of issues." Wood v. Wood, 135 Vt. 119, 121, 370 A.2d 191, 192 (1977). In other words, " 'courts are not instituted to render advisory opinions.' " Baker v. Town of Goshen, 169 Vt. 145, 151, 730 A.2d 592, 596 (1999) (quoting In

re Constitutionality of House Bill 88, 115 Vt. at 529, 64 A.2d at 172). The issues raised by REV are premature, and we therefore lack jurisdiction to consider them. See id. at 152, 730 A.2d at 597 (dismissing appeal that sought impermissible advisory opinion).[5]

The appeal is dismissed.

FOR THE COURT:

_____
Chief Justice

---

[5] The Legislature has directed that the cumulative capacity of the standard-offer program include a variety of technologies, including large wind, biomass, and hydroelectric power, but has not required that the Commission bring these respective technologies into the standard-offer program within any particular time frame or even in specified amounts. If, as the standard-offer program approaches its statutory maximum capacity, some technologies still remain virtually unrepresented in the program's portfolio, it may result in a failure to comply with the statutory mandate in the cumulative allocations. In ruling that REV's challenge to the 2017 allocation of new capacity, in which REV seeks relief by way of an order regulating the 2018 RFP, is non-justiciable, we do not address the question of whether a challenge to the Commission's cumulative capacity may become justiciable in other contexts.