### In re Juster Associates

[396 A.2d 1382]

Nos. 127-78 & 128-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed December 28, 1978

*Carroll, George, Hill & Anderson,* Rutland, for Plaintiff.

*Robert E. Broderick,* Rutland City Attorney, Rutland, for City of Rutland.

*Corsones & Hansen,* Rutland, for Landowners.

*M. Jerome Diamond,* Attorney General, and *Benson D. Scotch,* Assistant Attorney General, Montpelier, for State.

**Daley, J.** Justgold Holding Corporation was granted a land use permit on July 19, 1973, to develop a shopping center on a 31 acre tract of land in the Town of Rutland. The Environmental Board (Board) issued the permit after finding, among other matters, that "on site sewage disposal can be accomplished as proposed." The shopping center, complete with a sewage system which met the conditions of the permit, was thereafter constructed. It opened in the fall of 1974. In 1976,

the sewage disposal system failed, and the Vermont Health Department ordered that its use be discontinued. Since that time, the waste has been trucked to a treatment plant for disposal.

Juster Associates (Juster), a successor to Justgold Holding Corporation, examined a number of possible solutions for its sewage disposal problem. It conducted tests of other sites on the 31 acre parcel and determined that none was suitable for locating a replacement system. It was unable to reach an agreement with the City of Rutland, a municipality adjacent to the Town of Rutland, for permission to connect onto its sewer lines. And its request for a temporary pollution permit from the Environmental Conservation Agency to discharge into the nearby Tenney Brook was denied. The agency reasoned that "[t]he discharge of even treated waste to a small brook such as Tenney Brook will have a serious adverse effect particularly during terms of low flow."

In March, 1977, the Board advised Juster that trucking the sewage did not comply with the terms of the permit. It directed Juster to either repair its sewage system or to propose an alternative for its approval.

Juster's search for an adequate sewage disposal facility turned to a four acre parcel easterly of Tenney Brook, a parcel near, but not contiguous to, the shopping center. The land was found to be unsuitable in its natural state, but Juster proposed to modify the site and install a new and different waste treatment system. The Environmental Conservation Agency gave conceptual approval to the site modifications, and the Board was notified of its actions.

On August 2, 1977, the Board set out the procedure for review of the alternative sewage disposal system. It informed Juster that an amendment to the permit issued for the development of the shopping center would be required, and it directed Juster to file its application for an amendment with the state Board rather than the District Commission. This procedural instruction was made without notice to any other person.

In accordance with the Board's directive, Juster filed an application for a permit amendment with the Board. The Board scheduled the first hearing for four days after the application was filed. Notice of the filing was not published.

And notice of the hearing was given only to those persons who had been parties to the previous Board proceedings. Juster, the Environmental Conservation Agency, the Town of Rutland, and the City of Rutland appeared at the hearings.

At the second hearing, three lower riparian landowners on the Tenney Brook, who contended that they would be adversely affected if the amendment were granted, sought to become parties to the proceedings before the Board. The landowners made no claim, in their petition for admission, that they were adjoining landowners under the terms of the statute, because their lands are located approximately one mile downstream from the four acre lot in question. In denying their application, the Board stated that "[s]ince the matter before the Board is an amendment to an existing permit, and the petitioners were not parties to the original application, they should not be allowed in as parties to the amendment to the permit." It ruled also that their interests were adequately protected by the City of Rutland's participation in the case, and that there was insufficient evidence to show that they would be either adversely affected or of material assistance to the Board.

After three more hearings, the Board filed its findings of fact and conclusions of law. It then issued an amendment to the land use permit, allowing the development of the four acre site as a sewage disposal facility for waste from the shopping center.

Two separately docketed appeals arose out of the proceedings before the Board. The riparian owners, relying for standing on the provisions of the Administrative Procedure Act, 3 V.S.A. §§ 801–820, appeal from the order of the Board denying them party status. They further contend that the Board lacked jurisdiction and that the Board erred in failing to give notice in the manner prescribed by statute. Their standing to raise these questions is challenged by Juster in a motion to dismiss. The City of Rutland, in its appeal, contends that the findings of the Board are not supported by the evidence, are inconsistent with its conclusions, and do not support its decision.

No one questions the applicability of our so-called Act 250, found in 10 V.S.A. chapter 151. The project in question is to

be located on more than one acre of land within a municipality which has not adopted permanent zoning and subdivision bylaws, 10 V.S.A. § 6001(3), and therefore comes within the scope of the statute. The initial issue—a matter which we raise on our own motion, see *Woodard* v. *Porter Hospital,* 125 Vt. 264, 266, 214 A.2d 67, 70 (1965)—is whether the Board had jurisdiction over Juster's application for a permit to develop the four acre tract as a sewage disposal facility. This question is common to both appeals and we treat them as one.

The purpose of Act 250 is to protect and conserve the environment of the state and to insure that lands slated for development are devoted to uses which are not detrimental to the public welfare and interest. 1969 No. 250 (Adj. Sess.), § 1; *In re Great Eastern Building Co.,* 132 Vt. 610, 614, 326 A.2d 152, 154 (1974). These ends are served by a system of land use permits established by the Legislature. Where the Act applies, property may not be developed without a permit. 10 V.S.A. § 6081. An application for a permit must be made to a District Commissioner. 10 V.S.A. § 6083. The District Commission must provide general notice, by newspaper publication, and notice to certain persons designated by statute and by Board rule. 10 V.S.A. § 6084. After hearing, the District Commission may approve the application and issue a permit. 10 V.S.A. § 6086. Within this framework, the Board acts as a quasi-judicial appellate body, to hear appeals from commission decisions. Environmental Board Regulations, Rule 1(C)(1).

■ Notwithstanding the statutory procedure of hearings at the District Commission level with appeals to the Board, the Board seeks, by granting an amendment to an outstanding permit, to allow a four acre tract of land to be developed without proceedings before the District Commission. It contends that its power to do so lies in its jurisdiction to enforce the permits that it issues. The Board argues that it has jurisdiction because the land is to be used to fulfill a condition attached to an existing permit. We cannot agree.

We do not dispute the Board's authority to police its permits. It may, under the statute, revoke a permit if the conditions attached to the permit are violated. 10 V.S.A. § 6090.

But we cannot allow it, under the guise of permit enforcement, to subvert the protective scheme ordained by the Legislature. The statute is intended, by a system of notice and hearings, to assure full consideration of land use proposals for all parcels of land. In bypassing the District Commission, the Board precluded a complete discussion of the issues involved in constructing a waste disposal facility on new acreage. This land was not considered in the previous hearings. When the original permit was issued, the matters now under discussion were not even contemplated. Development of the four acre plot may affect persons other than those who participated in the hearings that were conducted on the shopping center. However, the public was not notified that the land was to be developed, thus circumventing its participation.

The Board's continuing authority over its permits may include supervision of the uses and conditions imposed by the permit, but it does not extend to considering a request to develop new land. An amendment to the permit might have been appropriate if Juster had, for example, wished to install a different type of sewage system than that approved—a question we need not decide here—but it is not proper where the proposal involves new construction on an entirely different tract of land. To accept the Board's rationale is to diminish the scrutiny given to land use under the statutory framework, because it allows for approval of a development without the discussion provided for by the statute.

Our review of the record convinces us that the Board lacked authority to entertain the application filed by Juster. Initial consideration of a land use proposal is a function assigned by the Legislature to the District Commission. The Board is not vested with concurrent jurisdiction to hear and decide the same matters.

A denial of the Board's jurisdiction over the application necessarily disposes of all other allegations of error arising out of the proceedings before it. For this reason we need not pass upon the claims of the riparian landowners as to party status, nor need we determine the claims of error made by the City of Rutland.

*The motion of Juster Associates to dismiss the appeal is denied. The order of the Board dated March 24, 1978, issuing the amendment to the land use permit dated July 19, 1973, is vacated and set aside.*