2009 VT 71

## In re CVPS/Verizon Act 250 Land Use Permit Numbers 7C1252 and 7C0677-2

[980 A.2d 256]

No. 07-441

Present: **Reiber, C.J., Dooley, Skoglund and Burgess, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed August 6, 2009

*Christopher D. Roy* of *Downs Rachlin Martin PLLC*, Burlington, for Appellant.

*William H. Sorrell*, Attorney General, and *Paul R. Brierre*, Assistant Attorney General, Montpelier, for Appellee.

*William B. Piper* and *Joslyn L. Wilschek* of *Primmer Piper Eggleston & Cramer PC*, Montpelier, for Amicus Curiae Thirteen of Vermont's Municipal Electric Departments.

*Victoria J. Brown* of *Primmer Piper Eggleston & Cramer PC*, Burlington, for Amicus Curiae Vermont Electric Cooperative, Inc.

*Harriet Ann King* of *King & King*, Waitsfield, for Amicus Curiae Green Mountain Power Corporation.

¶ 1. **Skoglund, J.** In this appeal, we consider the scope of Act 250 jurisdiction over utility line projects. Central Vermont Public Service Corporation (CVPS) sought an Act 250 permit to extend one of its electrical distribution lines. It appeals from the Environmental Court's determination that it must not only obtain a permit pursuant to Act 250 Rule 70, 12 Code of Vt. Rules 004 060-18 to -20, which specifically applies to utility line projects, but it must also obtain an amendment to an existing Act 250 permit held by a third party and be named as a co-permittee on that permit.[1] CVPS argues that the court erred in ordering it to be named as a co-permittee on the third-party permit because Rule 70 provided the sole basis for jurisdiction over its project. We agree that the Environmental Court erred, and we therefore reverse the court's decision.

¶ 2. The record indicates the following. In October 2006, CVPS applied for an Act 250 permit to construct a 2500-foot extension of an electrical distribution line in Danville, Vermont, most of which would be located underground.[2] CVPS obtained easements for its line corridor, one of which traversed land subject to an existing Act 250 permit held by a third party ("Barry permit"). The Barry permit approved the creation of three building sites, but it did not authorize further development of the subject property.

---

[1] The rules referenced herein are codified in their current form at 12 Code of Vt. Rules 004 060-1 to -2. Unless otherwise noted, all citations are to the current rules.

[2] Verizon New England was also a party to the permit application, but because it is not a party to this appeal, we do not refer to it in our decision.

¶ 3. CVPS subsequently requested a jurisdictional opinion from the District 7 Environmental Coordinator on whether its line corridor would require an amendment to the Barry permit, in addition to the Act 250 permit required under Rule 70 for the line extension itself. The district coordinator issued an initial jurisdictional opinion, concluding that an amendment to the Barry permit was required because the project constituted a "material change" to the development approved under the Barry permit. See Rule 2(C)(6) (defining "material change" as any change to a permitted development or subdivision that has a significant impact on any finding, conclusion, term or condition of the project's permit and which may result in an impact with respect to any of the criteria specified in 10 V.S.A. § 6086(a)(1)-(10)); see also Rule 34(A) (permit amendment required for any "material change" to a permitted development); Rule 34(C) (noting that, at discretion of district commission, a proposed amendment may instead be subject to new application process).

¶ 4. In December 2006, the district commission issued two permits — a new Act 250 permit to CVPS and an amended Barry permit that named CVPS as a co-permittee. Both permits stated that the utility line project was subject to Act 250 jurisdiction for two independent reasons: (1) the project met the criteria set forth in Rule 70, and (2) the project constituted a "material change" to the Barry permit under Rule 2(C)(6).

¶ 5. CVPS appealed both permits to the Environmental Court, and the appeals were consolidated. CVPS argued that the district commission erred by finding that a "material change" to an existing development could be an independent trigger for jurisdiction over its utility line project. CVPS also argued that the district commission erred in naming it as a co-permittee in the Barry permit. CVPS moved for summary judgment, and the Land Use Panel of the Natural Resources Board opposed its request. In an August 2007 decision, the court granted summary judgment to the land use panel.

¶ 6. The court first considered the terms of the Barry permit, which addressed the future residential development of a 289-acre parcel of land. The Barry permit had approved three future building sites as identified on a site development plan, but it had not approved the actual subdivision or the construction of these residences. Instead, the permit required an amendment before actual construction or subdivision of any parcels associated with the building sites.

¶ 7. The permit noted that the primary concern in developing the tract for residential purposes was the fact that the majority of the parcel was a mapped deer yard. For this reason, the permittee had agreed, as a condition of the permit, that no further development of the tract would be allowed unless it could be demonstrated that the development would not have any further impact on the tract's ability to serve as a protected deer yard or unless the tract was no longer appropriate, necessary or functional as a deer yard. The permit also prohibited any further development of the parcel absent the concurrence of the Department of Fish and Wildlife, the Agency of Natural Resources, and the District Environmental Commission, and the written approval of the district commission or a written determination from the district coordinator that a permit was not required. In light of these provisions, the court concluded that the Barry permit plainly required an amendment before CVPS could construct and install its electrical distribution line.[3]

¶ 8. Even if the Barry permit had not expressly required an amendment, the court continued, a permit amendment would nonetheless be required under Rule 34(A), if the extension of the utility line constituted a material or substantial change to the previously-permitted project. In so concluding, the court rejected CVPS's assertion that Rule 70 provided a separate regulatory framework for utility projects, to the exclusion of Rule 34(A). It reasoned that Rule 70 simply provided procedures for the processing of applications for new transmission lines, and if the Natural Resources Board had intended to exempt such projects from "amendment jurisdiction" under Rule 34(A), it could have done so. Nonetheless, the court found that it could not determine from the facts provided if the project constituted a material or substantial change to the Barry permit, and thus, summary judgment was not appropriate on this ground. Because the Barry permit itself required an amendment, however, the court found that this conclusion did not change the result.

---

[3] The Barrys have never been a party to this action and despite the fact that their permit was at issue, the court did not order them to obtain an amendment. Instead, as discussed in additional detail below, the Environmental Court remanded the case involving the Barry permit to the district commission for the sole purpose of revising the permit to clarify and state that "CVPS is a co-permittee only to the extent of its easement interest in the line corridor and not as to the remainder of the project property."

¶ 9. Finally, the court addressed CVPS's assertion that it should be removed as a co-permittee on the Barry permit for various policy reasons, including concerns about the operation of its line should another co-permittee violate the terms of the Barry permit. The court found insufficient "good cause" under Rule 10(A) to warrant a waiver of the co-applicant requirement, noting that CVPS had not identified any authority for the proposition that, as the owner of an easement in the property and the developer of the land within the line corridor, it should be removed as a co-permittee. The court clarified, however, that CVPS should be listed as a co-permittee only to the extent of its easement interest in the line corridor, and not as to the remainder of property subject to the Barry permit. The court thus denied CVPS's motion for summary judgment and granted summary judgment to the land use panel on the question of whether an amendment to the Barry permit was required. This appeal followed.

¶ 10. On appeal, CVPS argues that the court's decision regarding amendment jurisdiction was both unnecessary and unsupported by the rules. We review the Environmental Court's summary judgment ruling using the same standard as the Environmental Court. *In re Hildebrand*, 2007 VT 5, ¶ 9, 181 Vt. 568, 917 A.2d 478 (mem.). Summary judgment is appropriate where there is no genuine issue of material fact and any party is entitled to judgment as a matter of law. *Id.*; V.R.C.P. 56(c)(3). As discussed below, we conclude that Rule 70 provided the sole basis for Act 250 jurisdiction over this utility project, and thus, the court erred in ordering CVPS to be named as a co-permittee on an amended Barry permit.[4]

---

[4] In reaching our conclusion, we need not decide whether the Environmental Court's jurisdictional analysis is entitled to the same level of deference previously afforded to jurisdictional rulings made by the Environmental Board. Even if we apply the standard previously afforded to Environmental Board rulings, we would reverse the court's decision. See, e.g., *In re Audet*, 2004 VT 30, ¶ 9, 176 Vt. 617, 850 A.2d 1000 (mem.) (Supreme Court defers to Environmental Board's interpretation of Act 250, and will sustain Board's interpretations on appeal absent compelling indications of error); see also *In re Green Crow Corp.*, 2007 VT 137, ¶¶ 12-13, 183 Vt. 33, 944 A.2d 244 (identifying similar standard, but noting that Court will not sustain decision by Board that purports to enlarge its own powers beyond those granted by the Legislature, and stating that with respect to agency decisions that are arguably jurisdictional, Supreme Court will generally afford less deference to purely legal determinations and more deference to fact-intensive determinations that rely on agency expertise); *Huntington v. Dep't of Soc. &*

## I. Mootness

¶ 11. Before turning to the merits, we briefly respond to the issue raised by the dissent. The dissent concludes, sua sponte, that this appeal should be dismissed because CVPS no longer has a legal stake in the outcome of this case and there is no meaningful relief that can be afforded CVPS by this Court and, thus, CVPS is seeking an advisory opinion. The dissent misunderstands the issues presented on appeal.

¶ 12. As recounted above, the Environmental Court concluded that, based on the language of the Barry permit, CVPS was subject to the terms of the permit and, consequently, that it must obtain an amendment to the Barry permit before installing its line. It further found that CVPS would be required to seek a permit amendment pursuant to Rule 34 if the extension of the utility line constituted a material or substantial change to the Barry permitted project. These obligations were in addition to the requirement that CVPS obtain an Act 250 permit for its line under Rule 70. These are the decisions appealed to this Court. CVPS argues that Rule 70 provides the sole basis for Act 250 jurisdiction over utility line projects and that it should not be required to seek an amendment for a permit to which it was never a party and under rules that do not control here. CVPS retains a legal stake in the outcome of these proceedings, and this Court can offer it meaningful relief. See *In re Constitutionality of House Bill 88*, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949) (Vermont Supreme Court is empowered "to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction" (quotation omitted)); see also *J.L. v. Miller*, 174 Vt. 288, 292, 817 A.2d 1, 4 (2002) ("The presence of an actual controversy turns on whether the plaintiff is suffering the threat of actual injury to a protected legal interest, or is merely

*Rehab. Servs.*, 139 Vt. 416, 419, 430 A.2d 460, 462 (1981) (Supreme Court accords "great weight to interpretation by the promulgator of a regulation, but . . . only . . . where the interpretation is consistent with the purposes of the act under which the regulation is made"); and see also *In re Albert*, 2008 VT 30, ¶ 6, 183 Vt. 637, 954 A.2d 1281 (mem.) (explaining that because Environmental Court is part of judicial branch, there is no separation-of-powers imperative for this Court to deferentially review its decisions, and that whatever deference the Environmental Court is owed in the area of substantive environmental law does not apply to its construction of statutes governing general principles of law such as party standing).

speculating about the impact of some generalized grievance." (quotation omitted)).

■ ¶ 13. Rather than resolve this controversy, the dissent suggests that we strike CVPS's name from the Barry permit and vacate the entire Environmental Court decision as "unnecessary dicta." *Post*, ¶¶ 33-34. It would seem obvious that striking CVPS's name from the Barry permit alone is meaningful relief. Moreover, the Environmental Court's entire decision below can hardly be characterized as dicta. Unlike the cases cited by the dissent, the question of whether CVPS was required to be named as a co-permittee on the Barry permit was clearly "in dispute" and it formed "a necessary part of the final disposition of the case to which it pertains." *Wood v. Wood*, 135 Vt. 119, 121, 370 A.2d 191, 192 (1977).[5] Indeed, it was the sole issue decided by the Environmental Court. The controversy is live and CVPS is entitled to have this Court decide if it must be named as a co-permittee on the Barry permit under the terms of that permit and whether Rule 34(A) applies to it.

## II. Act 250 Jurisdiction Over Utility Line Projects

■ ¶ 14. We thus turn to the merits. In reviewing the rules governing Act 250, we apply familiar principles of construction, including a presumption that the drafters of the rules intended "the plain ordinary meaning of the language used." *Comm. to*

---

[5] The cases cited by the dissent do not support its position. In *In re Pilgrim Partnership*, for example, we affirmed the Environmental Board's holding that a landowner was required to include his neighbor as co-applicant on a revised Act 250 permit application to be submitted to the district commission. 153 Vt. 594, 598, 572 A.2d 909, 911 (1990). We noted, in response to an argument raised by the landowner, that the Environmental Board's discussion of how the landowner might comply with a certain Act 250 criterion in the proceedings before the district commission was not necessary to the Board's holding concerning the neighbor's status and it was premature in light of the remand to the district commission. We simply recognized that the landowner was in no way bound by the Board's dicta, but instead remained free on remand to propose alternative methods of complying with the Act 250 criterion at issue. *Id.* Unlike the extraneous statements discussed in *Pilgrim Partnership*, CVPS is challenging the Environmental Court's express holding, not dicta. The dissent's reliance on *Chittenden South Education Ass'n v. Hinesburg School District*, 147 Vt. 286, 294, 514 A.2d 1065, 1071 (1986), is equally misplaced. In that case, we declined to address an issue raised by a cross-appellant — the prevailing party — where our resolution of the issue would not entitle the cross-appellant to any further relief, nor change the relief afforded. The same cannot be said here.

*Save the Bishop's House, Inc. v. Med. Ctr. Hosp. of Vt., Inc.*, 137 Vt. 142, 153, 400 A.2d 1015, 1021 (1979); *In re 1650 Cases of Seized Liquor*, 168 Vt. 314, 319, 721 A.2d 100, 104 (1998) ("We apply the same rules of statutory construction to a regulation as we do to a statute."); see also *In re Vitale*, 151 Vt. 580, 584, 563 A.2d 613, 616 (1989) ("The primary rule when reviewing [the] construction of an administrative rule is to give language its plain, ordinary meaning."). We are also mindful, when considering Act 250's jurisdictional threshold, that "legislation in derogation of common law property rights will be strictly construed." *Bishop's House*, 137 Vt. at 152, 400 A.2d at 1020. As discussed below, based on the history and the plain language of the rules, as well as the purposes served by Act 250, we conclude that Rule 70 exclusively governs Act 250 jurisdiction over utilities.

¶ 15. Generally speaking, Act 250 prohibits parties from subdividing land or commencing "development" without a permit. 10 V.S.A. § 6081(a). Utility companies are different from other developers in that they are statutorily obligated to provide electrical, communication, or other services to the public. See 30 V.S.A. § 219 (electric companies, and other corporations subject to regulation under chapter 5, Title 30, "shall be required to furnish reasonably adequate service, accommodation, and facilities to the public"), *id.* § 2801 (describing general duties of companies engaged in the business of generating electric energy or transmitting it and distributing it for heating, lighting, or power purposes or for any other public use). In light of their special status, it is not surprising that utility line projects have been governed by a special set of permitting rules almost since the inception of Act 250.

¶ 16. Initially, those utility projects that did not require a certificate of public good were governed by "Appendix A," titled "Power and Communication Lines and Facilities: Permit Requirements." The stated purpose of Appendix A was to "establish rules and procedures for applications for a permit [under Act 250] by public and private utilities." Pursuant to these rules, an Act 250 permit was required to

> construct, relocate, reconstruct, or extend any transmission facility for any purpose whether above, below, or on ground if the construction of improvements for the right-of-way involves more than one acre . . . if within a

> municipality not having permanent zoning and subdivision ordinances or more than ten acres . . . if a municipally owned utility.

Appendix A, Rule A-3; see also Rule A-3(c) (identifying specific exemptions from permit requirement). These rules described the necessary components of a permit application, and set forth requirements concerning the installation of lines.

¶ 17. Effective January 2001, the Environmental Board promulgated a revised set of rules, which eliminated Appendix A, and instead expanded the definition of "development" to include the following:

> The construction of improvements for electrical distribution or communication lines and related facilities that are located on rights-of-way, or easements, of more than one acre of land owned or controlled by a person or persons in a municipality without both permanent zoning and subdivisions bylaws. The phrase "construction of improvements" shall include construction, relocation, extension, and reconstruction. . . . In a municipality with both permanent zoning and subdivision bylaws, this jurisdiction will apply if the rights-of-ways or easements involve more than ten acres of land. For the construction of improvements by a municipally-owned utility, regardless of the existence of zoning or subdivision bylaws in the area where improvements will be constructed, this jurisdiction will apply only if the rights-of-way[] or easements involve more than ten acres of land.

Rule 2(A)(12) (2001). The rule described how to calculate acreage for purposes of utility projects and also identified specific exemptions from this jurisdiction. See Rule 2(A)(12)(a), (b) (2001); see also Rule 2(F)(3) (defining "involved land" for purposes of electrical distribution or communication lines and related facilities to include only the acreage identified and calculated as set forth in Rule 2(A)(12)); 2(T) (2001) (defining term "electrical lines, communication lines, and related facilities"). Rule 70, titled "Utility Line Installations and Applications," described the requirements for installation and the process for permit applications to construct, relocate, reconstruct, or extend any electrical distribution line or related facility. Rule 70 (2001).

¶ 18. In May 2006, the rules were again revised. The utility-related rule provisions were consolidated into a revised Rule 70, titled "Utility Line Jurisdiction, Installations and Applications," and this rule applies here.[6] Rule 70(B) specifically provides:

> **(B) Utility Line Jurisdiction.** The construction of improvements for electrical distribution, natural gas distribution, or communication lines and related facilities that are located on rights-of-way, or easements, of more than one acre of land owned or controlled by a person or persons in a municipality without both permanent zoning and subdivision bylaws. The phrase "construction of improvements" shall include construction, relocation, extension, and reconstruction. . . . In a municipality with both permanent zoning and subdivision bylaws, this jurisdiction will apply if the rights-of-way[] or easements involve more than ten acres of land. For the construction of improvements by a municipally-owned utility, regardless of the existence of zoning or subdivision bylaws in the area where improvements will be constructed, this jurisdiction will apply only if the rights-of-way[] or easements involve more than ten acres of land.

As in prior rules, the acreage calculation methodology is set forth, and Rule 70(B)(1) states that jurisdiction will apply if a project exceeds the acreage thresholds set forth above. The rule also defines relevant terms and sets forth specific exemptions from jurisdiction under Rule 70, including cases where an electrical distribution line is within a development that has obtained a permit, provided that the line was included in the application for the permit. See Rule 70(B)(1)(a)-(c), 70(B)(2)(a). Additionally, the rule sets forth the necessary components of a permit application for the construction, relocation, reconstruction, or extension of any electrical distribution or communication line or related facility. Rule 70(D).

¶ 19. In addition to Rule 70, two recently enacted statutory provisions also touch on the scope of Act 250 jurisdiction over

---

[6] The new rules eliminated the specific definitions of the term "development." Instead, revised Rule 2(A) states that "[t]he term 'Development,' relating to Act 250 jurisdiction, is defined at 10 V.S.A. Sections 6001(3)(A), 6001a, 6001b, and 6001c. Jurisdiction also attaches to any substantial change to a pre-existing development — 10 V.S.A. Section 6081(b)."

utility line projects. 10 V.S.A. § 6081(r) provides that the subsequent construction of improvements for a permitted utility project that were not identified or reasonably identifiable at the time the original permit was obtained will be considered new construction, and not a material or substantial change to the existing project.[7] Section 6081(q) states that for the purpose of reviewing those utility projects that, standing alone, constitute a development for purposes of Act 250, the district commission shall not consider the actual or potential impacts of the construction of other improvements to be served by those lines and subsidiary facilities in evaluating the actual and potential impacts of the project under 10 V.S.A. § 6086(a).

¶ 20. In contrast to these utility-specific provisions is Rule 34, titled "New Permit Applications and Permit Amendments: Substantial and Material Change."[8] Rule 34(A) provides that an amendment is required for any "material change" to a permitted development or subdivision, or any administrative change in the terms and conditions of a land use permit.[9] As noted above, a "material change" is defined as "any change to a permitted development or subdivision which has a significant impact on any finding, conclusion, term or condition of the project's permit and

_____

[7] Section 6081(r) specifically provides:

> In situations in which the construction of improvements for any combination of electrical distribution and communications lines and subsidiary facilities, standing alone, constitutes a development subject to the jurisdiction of the board or district commission under this chapter, subsequent construction of improvements for any combination of electrical distribution and communications lines and subsidiary facilities not identified or reasonably identifiable at the time construction commences, standing alone, shall be considered new construction of improvements and shall not be considered a material or substantial change to that previously permitted development.

[8] The dissent believes any discussion of Rule 34 is completely advisory as the trial court, on the record before it, could not determine if compliance with the rule was triggered. However, it clearly considered the rule applicable to the regulation of utility projects, over and above the provisions of Rule 70, and specifically held that Rule 70 did not exempt such projects from "amendment jurisdiction" under Rule 34(A). This specifically is one of the issues on appeal. It does not arise from dicta.

[9] Rule 34(B) addresses "substantial changes" made to "pre-existing developments," which are developments defined in part as those in existence before June 1, 1970. See Rule 2(C)(8). If a change to a pre-existing development or subdivision involves a "substantial change," thus implicating Act 250 jurisdiction, it is subject to a new application process. Rule 34(B).

which may result in an impact with respect to any of the criteria specified in 10 V.S.A. § 6086(a)(1) through (a)(10)." Rule 2(C)(6). Rule 34 also provides that proposed amendments may be subject to a new application process or to simplified review procedures set forth in the rule, at the discretion of the district coordinator. Rule 34(C). If a change to a preexisting development or subdivision involves a "substantial change," thus implicating Act 250 jurisdiction, it is subject to a new application process. Rule 34(B). One can see a correlation between the requirements imposed by Rule 34 and those specifically imposed on electrical distribution or communication lines under 10 V.S.A. § 6081(r) requiring a new application process when a permitted utility project undertakes subsequent construction of improvements.

¶ 21. As set forth above, the Environmental Court concluded that Rule 70 did not provide the exclusive means of obtaining Act 250 jurisdiction over utility line projects. Instead, it found that CVPS must be added as a co-permittee to an existing Act 250 permit because the terms of the Barry permit required an amendment prior to any further development of the subject property. The court also stated that Act 250 jurisdiction would attach to the utility line project under Rule 34 if the project constituted a "material or substantial change" to the Barry permit. The court erred.

¶ 22. It is evident that Rule 70, in conjunction with the statutory provisions discussed above, was intended to define the scope of Act 250 jurisdiction over utility line projects. The rules are specific and comprehensive, and they plainly limit Act 250 jurisdiction to those utility line projects that meet certain threshold requirements, i.e., projects that involve the construction of improvements on easements or rights-of-way of more than one acre in municipalities without both permanent zoning and subdivision bylaws, or more than ten acres in municipalities with both permanent zoning and subdivision bylaws. The rule does not contemplate that, despite these specific jurisdictional thresholds, utilities would also be required to obtain amendments to any and all existing Act 250 permits held by third parties wherever their projects would constitute a "material change" to the terms of those permits. This approach would be inconsistent with the spirit and purpose of Rule 70, and it would vastly expand the scope of Act 250 jurisdiction over utilities. It would further expose utilities as co-permittees to liabilities and burdens that could arise, even if

only to petition a court for relief from suit given the limited scope of their co-permittee status. It could also require legal action to impose upon other permit holders from whom the utility obtained an easement the inclusion of the utility on a land use permit. The mischief that could follow from the Environmental Court's holding is unquantifiable.

¶ 23. This is not the regulatory approach set forth in the rules, and we reject the notion that the specific conditions contained in the Barry permit can serve to establish Act 250 jurisdiction over a utility in the first instance. While certain utility projects may not be subject to Act 250 review, despite the fact that they arguably constitute a "material change" to existing projects, this is precisely what Rule 70 requires.

¶ 24. We note, moreover, that the Legislature has declared that any unanticipated changes to permitted utility line projects will not be considered "material changes" to such projects but rather will be considered as "new construction." 10 V.S.A. § 6081(r). It is difficult to see why, if CVPS is not subject to Rule 34(A) for its own permit, it would nonetheless be required to obtain amendments to Act 250 permits held by third parties. This approach would be irrational. See *Kankakeeland Cmty. Action Program, Inc. v. Ill. Dep't of Commerce & Cmty. Affairs*, 557 N.E.2d 277, 281 (Ill. App. Ct. 1990) ("When courts interpret [administrative] rules in conjunction with a statute, they should construe the rules together with the statute to make, if possible, an effective piece of legislation in harmony with common sense and sound reason . . . .") (citation and quotation omitted), quoted in *In re Green Crow Corp.*, 2007 VT 137, ¶ 17.

¶ 25. There is no reason to require CVPS to obtain two Act 250 permits for the same project and conduct the same environmental evaluation twice. See *Bishop's House*, 137 Vt. at 153, 400 A.2d at 1021 (explaining that the "obvious purpose" of the Act 250 permit requirement is "to subject all 'development' to scrutiny at the district environmental commission level to assure that any adverse impacts on the values described in 10 V.S.A. § 6086 will not be undue, when considered against the benefits of the development"). Nor is there any purpose to be served by requiring CVPS to be listed as a co-applicant on the Barry permit to the extent of its easement interest, when its activities on the easement are already subject to a separate permit. Requiring

CVPS to amend permits held by others would accomplish nothing more than to impose potentially unrelated permit conditions upon CVPS and to place it and the operation of its utility line at the mercy of the behavior of others over whom it has no control. Act 250 does not contemplate this result.

■ ¶ 26. Our conclusion is consistent with the plain language of Rule 70 and with a narrow construction of the jurisdictional reach of Act 250. As we have explained, Act 250 does "not purport to reach all land use changes within the state, nor to impose the substantial administrative and financial burdens of the Act"; instead, the Legislature intended to reach only those land use changes "where values of state concern are implicated through large scale changes in land utilization." *In re Agency of Admin.*, 141 Vt. 68, 76, 444 A.2d 1349, 1352 (1982) (citing *Bishop's House*, 137 Vt. at 151, 400 A.2d at 1020)); see also *In re Spencer*, 152 Vt. 330, 334, 566 A.2d 959, 962 (1989) (noting that "although the purposes of Act 250 are broad, its application is not without limitation"). Rule 70 identifies when that threshold is met for utility companies.[10]

¶ 27. We are not persuaded otherwise by *In re Eustance Act 250 Jurisdictional Opinion*, 2009 VT 16, 185 Vt. 447, 970 A.2d 1285, cited by the dissent. The dissent misconstrues our holding in *Eustance*. In that case, we considered whether certain landowners were required to obtain an amendment to an Act 250 permit that governed their own property in order to make improvements to their property. The case did not involve the question of whether the Legislature intended utility companies to be bound by the terms of existing permits held by third parties.[11]

---

[10] The dissent expresses its fear that CVPS has now acquired the right to install line extensions less than 2200 feet long wherever it may want, regardless of the impact on wildlife habitat, wetlands, streams or agricultural soils. *Post,* ¶ 46. Of course, Rule 70, by its plain terms, has already conferred that so-called "right" on CVPS, expressly providing that no Act 250 jurisdiction attaches to utility line projects that fall below minimum acreage thresholds.

[11] In *Eustance*, the landowners' property was subject to an existing Act 250 permit, and their lot had been created through the subdivision of a larger parcel without a proper permit. The district coordinator and the Environmental Court concluded that the landowners needed a permit to construct improvements on their property. On appeal, the landowners argued that Act 250 jurisdiction did not attach because they had constructed improvements for farming purposes, which did not constitute the commencement of development. See 10 V.S.A. § 6001(3)(D) (term "development"

■ ¶ 28. The real issue in this case is not the presence of potential environmental harm caused by the utility line project, but the triggering of pertinent jurisdictional standards. Rule 70 reflects a clear policy statement that Act 250 will apply to utility line projects only in certain defined circumstances. This rule plainly controls the analysis, to the exclusion of jurisdictional thresholds that may be set forth in other rules. The Environmental Court erred in its expansive construction of Act 250 jurisdiction in this case, and we therefore reverse its decision.

*Reversed.*

¶ 29. **Dooley, J.,** dissenting. The question that the majority answers is moot, and we should dismiss the appeal rather than answer it. The majority decision is an improper advisory opinion. Moreover, the majority has largely ignored the main ground for the Environmental Court decision, and rendered its opinion based on its construction of the alternative rationale of the court. In fact, the primary ground of the Environmental Court was correct, as determined in the recent decision of this Court in *In re*

does not include construction of improvements for farming). We found this argument unpersuasive, concluding that even if landowners had not "commenced development," they had nonetheless commenced "construction on a subdivision," which triggered Act 250 jurisdiction. *Eustance*, 2009 VT 16, ¶ 17. We noted that our decision was a narrow one. *Id.* ¶ 17 n.10.

We advanced a second reason why the landowners were required to obtain an Act 250 permit amendment: the existing Act 250 permit expressly stated that "[a]ny sale [or] further construction . . . is specifically not approved without an amendment." *Id.* ¶ 19 (brackets omitted). The Environmental Court had relied on this condition to conclude that an amendment was required, and the landowners did not argue otherwise on appeal. We thus concluded that the landowners had conceded that an amendment was required by the terms of the permit, although we noted in dicta that this was a reasonable construction of the permit that we would otherwise affirm. We did not expressly hold, as the dissent argues, that "a prior permit condition controlled . . . irrespective of whether the farming exemption applied." *Post*, ¶ 43. Indeed, we engaged in no extended discussion of the farming exemption with respect to the applicability of the terms of the existing permit. Additionally, it was the landowners in *Eustance* who were responsible for obtaining a permit amendment. It is not apparent from this record that the holders of the Barry permit participated in the proceedings below. The Environmental Court did not order them to take any action, and they are not parties to this appeal. In any event, and more importantly, our decision in *Eustance* does not involve the same considerations as those at issue in the instant case, nor does its reasoning compel us to ignore the plain intent of the Legislature that Rule 70 provide the sole basis for Act 250 jurisdiction over utility line projects.

*Eustance Act 250 Jurisdictional Opinion,* 2009 VT 16, 185 Vt. 447, 970 A.2d 1285. If we do not dismiss the appeal, we should affirm the Environmental Court judgment. For these reasons, I dissent.

¶ 30. I start with why the majority decision is an improper advisory opinion. CVPS applied for and obtained an Act 250 permit to run an electric line through property because the line was long enough to create Act 250 jurisdiction under Rule 70. Because the line went through land already subject to an Act 250 permit, the district environmental coordinator and the district commission ruled that there were two grounds for Act 250 jurisdiction — the length of the line under Rule 70, and the requirement to amend the preexisting permit covering part of the land over which the line would run. CVPS objects and wants us to decide that the second ground for Act 250 jurisdiction is wrong, even as it acknowledges that the first ground is right. Thus, this is a dispute over reasoning, not result. CVPS has an Act 250 permit, and its land use regulatory requirements will not be affected one iota by the result of this appeal. What CVPS, joined by all the electric utilities in the state, wants is an advisory opinion that it can use in future disputes. We do not have the power to give such an opinion.

¶ 31. CVPS has acknowledged in this Court that it has an Act 250 permit, that it does not contest the requirement for such a permit or its terms, and that no regulatory responsibility imposed upon it is at stake in this appeal. Thus, from its inception this appeal sought nothing more than an advisory opinion on the validity of the second and alternative basis of jurisdiction found by the district commission — "advisory" because a decision that is not absolutely necessary to resolve a legal issue is nothing more than that, simply "solicited legal advice in anticipation of issues." *Wood v. Wood,* 135 Vt. 119, 120, 370 A.2d 191, 192 (1977) (reaffirming the limits on this Court's jurisdiction, "[t]he most basic [of which] is the prohibition against advisory opinions"). The majority candidly admits that Rule 70 provides jurisdiction over the line extension project. See *ante,* ¶ 10. Because of that acknowledgement, this is now an appeal with no consequences at stake. CVPS's land use regulatory requirements will not be affected by the decision of this Court. This appeal is truly moot.

¶ 32. It is one of the fundamental principles of our judicial system that we do not issue advisory opinions. See *In re Constitutionality of House Bill 88,* 115 Vt. 524, 529, 64 A.2d 169,

172 (1949). Because CVPS was required under Rule 70(b) to obtain an Act 250 permit to develop the utility line extension here at issue, the entire majority opinion in this case rejecting an additional ground for jurisdiction is advisory and unnecessary. As Chief Justice John Roberts, then sitting on the United States Court of Appeals, once observed, the "cardinal principle of judicial restraint" is that "if it is not necessary to decide more, it is necessary not to decide more." *PDK Labs., Inc. v. U.S. Drug Enforcement Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring); see also *Wood*, 135 Vt. at 121, 370 A.2d at 192 (question to be reviewed "must be a necessary part of the final disposition of the case").

¶ 33. We have faced the situation in this case in the past and recognized that it would be beyond our power to render the advisory opinion sought. For example, in *Chittenden South Education Ass'n v. Hinesburg School District*, 147 Vt. 286, 514 A.2d 1065 (1986), the cross-appellant teachers' union sought review of a part of the rationale of the Vermont Labor Relations Board decision under which it had prevailed. Noting that "[o]ur determination would not entitle the Association to any further relief, nor would it change the relief afforded," we held that we would not "pass on the merits of this issue because it requires this Court to render an advisory opinion prohibited by this State's Constitution." *Id.* at 294, 514 A.2d at 1071. We did so even though we recognized "the importance of the question posed," apparently the reason for the majority's advisory opinion in this case. *Id.* Our power is not created because the challenged alternative rationale for Act 250 jurisdiction may have future consequences. See *Baker v. Town of Goshen*, 169 Vt. 145, 152, 730 A.2d 592, 597 (1999). In any event, if the Court wants to be sure that there are no consequences from the Environmental Court's alternative grounds for Act 250 jurisdiction, it could vacate the decision as unnecessary dicta as discussed below. See *In re Pilgrim P'ship*, 153 Vt. 594, 598, 572 A.2d 909, 911 (1990) (striking permit condition where it was "not necessary" to the decision and mere "dicta").

¶ 34. In short, under established precedents of this Court, we do not have the power to issue a 100% dicta, advisory opinion in this case. The majority's response to this barrier to its jurisdiction is inexplicable to me. It says that "this Court can offer . . . meaningful relief," but fails to specify how. *Ante*, ¶ 12. All of its discussion after that generalization is about who is named as a

permittee and not about land use responsibilities. In fact, no regulatory responsibilities are added to CVPS by the Barry permit, which is exactly why this case is moot.

¶ 35. The majority is caught up in the fact that CVPS was required to have two permits. The record demonstrates, however, that the second permit adds nothing to CVPS's regulatory responsibilities. The second permit is actually an amendment to the Barry permit "issued for record-keeping to document that the tract is also subject to . . . [the CVPS permit], for a utility line project." CVPS had a valid objection to the amendment because it suggested that CVPS was a co-applicant with respect to the whole Barry permit development project. The Environmental Court solved the objection by making CVPS a co-applicant only with respect to the utility line easement, exactly its status under the Rule 70 permit. Thus, since CVPS is an applicant with respect to the utility line, there is no consequence to it being designated a co-applicant with respect to the same utility line. The majority has blown an amendment done for record-keeping purposes out of proportion.

¶ 36. If the majority believes that the Barry permit will "impose potentially unrelated permit conditions upon CVPS," *ante*, ¶ 25, the remedy should be to strike the Barry permit amendment, leaving CVPS subject to the same responsibilities under its Rule 70 permit. The majority states that such an action would be "meaningful relief." *Ante*, ¶ 13. Since the amendment was done for record-keeping purposes and not to impose additional risks or obligations on CVPS, its deletion is of little consequence to any party. The remedy is *not* to render an advisory opinion on an issue that is of no consequence to CVPS, except as an advance determination for some future dispute.

¶ 37. Unfortunately, the advisory nature of the majority opinion continues into its discussion of the merits. The Environmental Court gave two grounds for its decision; the first does provide Act 250 jurisdiction, the latter might provide such jurisdiction. The primary ground for the decision is that the Barry permit by its explicit terms requires an amendment to enable CVPS to run a line through the Barry property. The alternative ground was tentative: Act 250 amendment jurisdiction under Rule 34 might also require an amendment of the Barry permit if CVPS's project constituted a material or substantial change, a determination the court could not make on the sparse record. Thus, the court

granted summary judgment against CVPS on the first ground and ruled that it could not grant summary judgment on the latter ground. Clearly, the decision to decline to grant summary judgment is not a final judgment and is dicta in relation to the actual ground for the decision. Nevertheless, the majority spends 95% of its opinion on the dicta, producing dicta about dicta, and barely addresses the real basis for the court decision.

¶ 38. This is a second reason why the appeal of the amendment jurisdiction issue is moot. Having found jurisdiction because of the permit condition, the Environmental Court's decision on amendment jurisdiction was wholly unnecessary and of no effect. In the recent case of *Eustance*, 2009 VT 16, the Environmental Court was also confronted with the choice of basing Act 250 jurisdiction on a preexisting permit condition or on amendment jurisdiction under Rule 34. In that case, unlike this one, the Environmental Court understood that the first ground rendered it unnecessary to reach the second, a position we clearly understood and endorsed in observing that it "would be inappropriate for us to reach" the issue of amendment jurisdiction since it was rendered "moot." *Id.* ¶ 24. The majority is ignoring that determination of *Eustance* here. If the issue of Rule 34 jurisdiction was moot in *Eustance*, as we held, it is moot here for the same reason.

¶ 39. Although I believe that we should not address the merits of the issue raised by CVPS and resolved in the majority opinion, I also believe that the majority's decision is wrong on the merits. It barely mentions the primary rationale for the Environmental Court decision, which is based on 10 V.S.A. § 6086(c), a statute that finds no recognition anywhere in the majority opinion. Under this section, a district commission may issue an Act 250 permit containing such "requirements and conditions" as are allowable under a proper exercise of the police power and consistent with the environmental impact criteria set forth in subdivisions (1) through (10) of § 6086(a). Under this section, we have long acknowledged the Board's power "to police its permits," to "revoke a permit if the conditions attached . . . are violated," and generally to exercise "continuing authority over . . . the uses and conditions imposed by the permit." *In re Juster Assocs.*, 136 Vt. 577, 580-81, 396 A.2d 1382, 1385-85 (1978). Subsequent applicants are bound by the terms and conditions of the original permit unless it is modified. *In re Stowe Club Highlands*, 166 Vt. 33, 37, 687 A.2d 102, 104-05 (1996). The permit runs with the land and binds the "permittee, and their assigns and successors in interest."

¶ 40. Thus, the Environmental Court was clearly correct in concluding that the running of the utility line required an amendment under the Barry permit condition because the express language of that permit required the amendment. CVPS is an assignee of the land controlled by the permit holder, by virtue of the easement the landowner gave it to run the line extension.[12] The Environmental Court found that the running of the line was development for purposes of the permit condition, and the majority has not suggested otherwise. CVPS argues that we should construe development to mean development that would otherwise trigger Act 250 jurisdiction, in this case jurisdiction under Rule 70. This is clearly an unreasonable construction of the term that would render the permit condition superfluous because it would apply only when there is another source of jurisdiction — that is, when it is unnecessary. Here, the district commission already had jurisdiction over the property and was concerned that no activities occur that would affect the deer habitat. Running a utility line through the deer yard could destroy it, irrespective of whether the line was long enough to create jurisdiction under Rule 70. As we noted in *In re Audet*, 2004 VT 30, ¶ 11, 176 Vt. 617, 850 A.2d 1000 (mem.), Act 250 regulates "any construction activity, no matter how minute." The commission's prohibition on unapproved development must be viewed in this context.

¶ 41. We are left then with the wholly unsupported proposition that the commission cannot adopt a condition that will affect utility activity or enforce a neutral condition, like that involved here, against a utility line extension project. Nothing in Act 250 or Rule 70(b) implementing Act 250 gives utilities a blanket exemption from valid permit conditions. The majority cites nothing to support such a result. It is no answer that the preexisting permit did not bind CVPS because CVPS assumed the obligation of the permit by purchasing its easement over the Barrys' property.[13] Whatever may be the rule when the utility activity does not violate an explicit permit condition, the subject of virtually all of

---

[12] CVPS says in its brief that it is not "an assign or successor in interest to the permittees." That statement is obviously wrong. CVPS must acquire an interest in the land through which it is running its electric line. Its Act 250 application says it has "secured easements for the proposed line location from the property owners affected by the project."

[13] Undeniably, the actions of CVPS put the Barrys in violation of their permit, a consequence the majority ignores.

the majority's analysis, there is no support for the utility to have immunity when it does. If we reach the merits — and we should not — we should affirm the Environmental Court decision that CVPS and the landowner must comply with the permit condition that requires permit approval for the line extension on the property.

¶ 42. Indeed, we reached precisely this conclusion, in analogous circumstances, in our very recent decision in *Eustance*. The question there was whether subsequent agricultural development within a previously permitted subdivision was exempt from Act 250 jurisdiction under the farming exemption of 10 V.S.A. § 6001(3)(D)(i). We held that the development was not exempt for two reasons. First, we held that the exemption from "development" jurisdiction did not apply when Act 250 jurisdiction was based on the construction of a subdivision under 10 V.S.A. § 6081(a). 2009 VT 16, ¶¶ 16-18. Second, we held that a permit amendment was required by the express terms of the earlier permit in that case, which provided that "[a]ny sale [or] further construction . . . is specifically not approved without an amendment to this permit." *Id.* ¶ 19. Although we noted, in this regard, that the applicants had not challenged the Environmental Court's conclusion "that the express language of the permit condition required them to obtain a permit amendment irrespective of whether their construction activity would have been exempt as related to farming," we explained that we would have affirmed the trial court ruling "even if there were no concession." *Id.* ¶ 22.

¶ 43. I do not see how it is possible to harmonize our holding in *Eustance* with the majority holding here.[14] If a prior permit condition controlled there, irrespective of whether the farming exemption applied, it must control here irrespective of the pre-emptive scope of Rule 70. There is no evidence of legislative intent to override existing permit conditions in either case. Indeed, if we were to judge this question entirely on legislative intent, the

---

[14] While I oppose getting into the dicta about Rule 34 and Rule 70, as I stated in the text, I cannot let pass an additional way in which the majority analysis is contrary to *Eustance*. In a number of places, the majority unnecessarily says that Rule 70 provides the exclusive source of jurisdiction over utility lines. As the majority states, however, the jurisdictional definition is based on the length of a line that meets the requirement for a development of ten acres. Thus, as *Eustance* holds, exemptions from development jurisdiction do not apply to permits based on the presence of a subdivision. Just as they do not apply for farming, they cannot apply for utility lines.

legislative support for the farming exemption is the stronger, as the dissent in *Eustance* argued. Moreover, the application of the conflicting permit condition is more apparent here than in *Eustance*. The permit there generally prohibited "further construction" absent a permit amendment, which we construed to include agriculturally related construction, whereas here the condition was aimed specifically at protecting a mapped deer yard from any further disruption, a condition that was obviously triggered by placement of the utility line across the area in question.

¶ 44. While our holding in *Eustance* obviously speaks for itself, I cannot ignore the majority's statement that we "did not expressly hold . . . that 'a prior permit condition controlled . . . irrespective of whether the farming exemption applied.'" *Ante*, ¶ 27 n.11. We expressly held exactly that. We observed that the Eustances had conceded the trial court's "conclusion that the express language of the permit condition required them to obtain a permit amendment *irrespective* of whether their construction activity would have been exempt as related to farming," and we stated plainly that this was a reasonable conclusion "which we would affirm even if there were no concession." 2009 VT 16, ¶ 22 (emphasis added). If this was not a clear holding that the permit condition controlled irrespective of the farming exemption, I do not know what is. The majority also asserts that *Eustance* is somehow distinguishable because there the original permit holder sought approval whereas here it is CVPS, not the Barrys. This argument overlooks the fact that CVPS is the grantee of an easement across the property, and the Barry permit expressly provides that it "shall run with the land and the land uses herein permitted, and will be binding upon and enforceable against the Permittees and all assigns and successors in interest."

¶ 45. Finally, I emphasize that there are very real and substantial consequences from the majority decision, even though there are no consequences for the line extension in this case. The facts of this case do, however, provide a good background to understand those consequences. The Barry permit covers 289 acres, of which the majority is a mapped deer yard. Because of this significant attribute of the land, the first version of the permit prohibited any development or subdivision until the effect on the deer yard was resolved. Condition 3 of the permit stated:

Permittees agree that no further development of the tract shall be allowed unless it can be demonstrated that such development will not further impact on the potential of the tract to continue to serve as a protected deer yard or unless it is demonstrated that the tract itself is no longer appropriate, necessary or functional as a deer yard. In any event, no further development of the parcel shall be allowed without the concurrence of the Department of Fish and Wildlife, Agency of Natural Resources and the District Environmental Commission.

The site also contains a Class 2 wetland area, prime agricultural soils and a brook. With respect to the brook, the amended permit that covers the CVPS line also imposes special requirements. The Act 250 application shows that the line is placed underground to minimize the effect on wildlife habitat and that special precautions were taken to minimize impacts on the stream or wetlands and protect the agricultural lands.

¶ 46. This background is important because what CVPS seeks from the appeal, and has received from the majority decision, is the right for line extensions less than 2200 feet long[15] to go anywhere CVPS wants, and to be constructed in any way CVPS wants, irrespective of the impact on wildlife habitat, wetlands, streams or agricultural soils. That is, CVPS seeks the right not to protect the deer yard, and to not protect the stream and the wetland, even in a circumstance where the district commission has found that the need for protection is so great that it imposed a special protection condition even before a development proposal was submitted.[16] Of course, we do not know how CVPS will use its new authority now that it is free from regulation and does not have to comply with Act 250 conditions applicable to any other land developer, but its seeking of this advisory opinion, with amicus briefs from the other utilities in Vermont, does not suggest that we are dealing only with a matter of principle.

---

[15] This is the length of line, in a twenty foot wide corridor, that is necessary for the easement area to equal an acre and thus trigger jurisdiction under Rule 70.

[16] It is reflective of the sparring between this dissent and the majority opinion that the majority characterizes my position as limited to the environmental consequences of the action of utilities. See *ante*, ¶ 26 n.10. My main concern, in addition to the fact that we are rendering a broad and important holding in a wholly moot case, is that the majority has given utilities uniquely the right to violate special Act 250 permit conditions expressly applicable to them.

¶ 47. It is equally important to understand what is not at stake. The majority talks about the legal obligation on CVPS to run the electric line to extend service to a new user as if Act 250 is being used to block discharge of that obligation. It also talks about "unquantifiable" mischief. *Ante*, ¶ 22. In fact, CVPS has an Act 250 permit, and there is no suggestion in the record that denial of the permit was ever threatened or that utilities cannot meet their service obligation to the public consistent with Act 250 regulation. The only issue is whether CVPS will be required to extend the electric line in a way that is consistent with the maintenance of wildlife habitat and protects other environmental interests.

¶ 48. In closing, I reiterate the numerous reasons for which I cannot join the majority decision. First and foremost, this case is moot; we should dismiss the appeal. When it unnecessarily reaches the merits, the majority decision fails to address the actual rationale of the trial court, reversing the trial court's decision without responding to its analysis. The trial court's analysis was correct, as shown by a very recent decision of this Court, *Eustance*, that supports the trial court's analysis and is dead against the majority's decision. The majority's attempt to distinguish *Eustance* is clearly wrong; there is no distinction. I dissent.

¶ 49. **Allen, C.J. (Ret.)**, dissenting. While I concur with Part I of the majority that this case is not moot, I dissent because *Eustance* is controlling and cannot be distinguished.